[Criminal No. 381.   Filed November 9, 1915.]

[152 Pac. 578.]

## L. A. BROWN, Appellant, v. STATE, Respondent.

1. STATUTES—CONSTRUCTION—ADOPTED STATUTES.—Where a statute is adopted from the laws of another sovereignty *verbatim* in so far as practicable, the courts of the adopting state will either adopt a construction given it in the courts of the state of its origin or look to such construction as of persuasive force if it is sound or reasonable.

2. COURTS—PRECEDENTS—PREVIOUS DECISIONS — DICTA. — Although in deciding a case a court may by mere *dicta* give a construction to a statute, its statement is nevertheless a part of the history of the statute and a guide to its meaning.

   [As to single opinion as basis for doctrine of *stare decisis*, see note in Ann. Cas. 1914A, 1080.]

3. CONSTITUTIONAL LAW—CONSTRUCTION OF CONSTITUTION—PROVISION ADOPTED FROM FEDERAL STATUTE.—Constitution, article 23, section 1, as amended in 1915, providing that "ardent spirits, ale, beer, wine, or intoxicating liquor or liquors of whatever kind shall not be manufactured in or introduced into the state of Arizona under any pretense," and providing the penalty for its violation, having been borrowed *verbatim* as far as practicable from Revised Statutes of the United States, section 2139, may reasonably be given the construction applied by the courts of the United States to the federal statute.

4. INTOXICATING LIQUORS—PROHIBITED LIQUORS—STATUTES—CONSTRUCTION.—The prohibition in Constitution, article 23, as amended in 1915, of "ardent spirits, ale, beer, wine or intoxicating liquor or liquors of whatever kind" extends to all forms of beer, whether intoxicating or not; since the words, "intoxicating liquor of any kind" do not limit the specifically prohibited liquors to intoxicating forms, but those enumerated are absolutely prohibited in any form, and the limitation applies only to liquors not enumerated.

5. INTOXICATING LIQUORS—LIQUORS PROHIBITED—"BEER."—Any liquor, whether intoxicating or not, made by the usual process of making beer, although fermentation is arrested to reduce the percentage of alcohol, and regardless of its name, is "beer," within Constitution, article 23, as amended in 1915, prohibiting the sale of beer, etc., since it is the material and process, and not the name, which classifies the product.

APPEAL from a judgment of the Superior Court of the County of Cochise.   A. C. Lockwood, Judge.   Affirmed.

Messrs. Richardson & White and Mr. S. L. Pattee (Mr. G. P. Bullard, of Counsel), for Appellant.

Mr. Wiley E. Jones, Attorney General, Mr. Leslie C. Hardy and Mr. Geo. W. Harben, Assistant Attorneys General, and Mr. John F. Ross, County Attorney (Mr. O. Gibson, of Counsel), for the State.

ROSS, C. J.—The appellant, by information, was charged with the crime of selling "beer, ale, and intoxicating liquor" contrary to the prohibitory amendment to the Constitution of Arizona. The case was tried to the court without a jury, and upon the evidence the appellant was by the court found guilty as charged, and sentenced to pay a fine and to imprisonment in the county jail. This appeal is being prosecuted from the judgment of conviction.

The findings of fact, as given by the trial court, are interestingly stated as follows:

"Contrary to a more or less prevalent opinion, courts cannot decide questions of fact upon rumor, street talk or what evidence might or should have been introduced by the party, but solely upon what appears in court. The state, in this case, did not attempt in any manner to prove that barette, the liquor which Brown admitted he sold, is intoxicating, while the defense produced a number of reputable witnesses, more or less familiar with this liquor, who testified positively that it would be practically impossible for any man to become intoxicated on barette, no matter how much he drank. On the evidence, the court is compelled to hold that the liquor sold by L. A. Brown in this case was nonintoxicating. The only question then remains as to whether what was sold was beer. . . .

"The evidence of the state and the defense in this case agree substantially on the process of manufacture of the liquor in question. Without going into it in detail, it is quite clear in the mind of this court that barette is beer, regardless of what name it may be called by. From the above we find that the substance sold by the defendant in this case was a nonintoxicating beer."

We may say, in aid and in explanation of the findings of the court, that the liquor which the appellant was charged with selling was in bottles labeled as follows:

"Barette. Nonintoxicating beverage. Contains less than 2 per cent. alcohol by volume. Prepared by Copper City Brewing Co., Douglas, Arizona. Guaranteed by the Copper City Brewing Co. under the United States Food and Drug Act of 1906, series 26699."

Dr. Charles A. Meserve, who testified as an expert in behalf of the state, said that he analyzed the contents of one of said bottles, and that he found, as a result, that it contained 1.96 per cent by volume and 1.56 per cent by weight of alcohol. The brewmaster for the Copper City Brewing Company explained, in his testimony, the processes of manufacturing beer and barette, and, according to his testimony, both are malt liquors, the former being at the Copper City Brewing Company's plant made from barley, rice and hops, and the latter from barley and hops. It requires from 6 weeks to 2 months to make beer and from 10 to 14 days to manufacture barette, according to the testimony of the brewmaster. The latter witness defined barette as "a nonintoxicating malt beverage, as far as I can say." That he recognized it as a kind of beer is shown by this statement in his testimony:

"In barette we have a carbonator. It is a tank up about this high [indicating] and a screen in there with holes in it where the gas runs in on one side, and the beer runs in on the other side. The gas and the beer mix themselves together, and it runs itself together under pressure in another tank."

Dr. Meserve defined it as follows: "I consider it to be an alcoholic beverage closely resembling beer. More specifically, perhaps, a small beer or light beer. Light used in the sense of contents, rather than color."

The appellant complains of the court's finding of fact to the effect that the liquor in question was beer, and to the conclusion of law therefrom that the defendant was guilty, regardless of the nonintoxicating quality of the liquor.

The law the defendant is charged with violating is article 23, an initiated amendment to the Constitution of Arizona, which became effective January 1, 1915. It reads as follows:

"Section 1. Ardent spirits, ale, beer, wine, or intoxicating liquor or liquors of whatever kind shall not be manufactured in or introduced into the state of Arizona under any pretense. Every person who sells, exchanges, gives, bargains, or disposes of any ardent spirits, ale, beer, wine, or intoxicating

liquor of any kind to any person in the state of Arizona, or who manufactures, or introduces into, or attempts to introduce into the state of Arizona any ardent spirits, ale, beer, wine, or intoxicating liquor of any kind, shall be guilty of a misdemeanor and upon conviction shall be imprisoned for not less than ten days nor more than two years and fined not less than twenty-five dollars and costs nor more than three hundred dollars and costs for each offense: Provided, that nothing in this amendment contained shall apply to the manufacture or sale of denatured alcohol.''

This prohibition amendment was lifted almost bodily from an act of the Congress of the United States, regulating and prohibiting the introduction and sale of liquors into what was known as the Indian country. This congressional act had for its object the protection of the American Indian against the liquor traffic. The first congressional act was passed as early as 1832, and was limited to prohibiting the sale of spirituous liquors and wines to Indians in an Indian reservation.. This act was amended in 1862, making it a crime to sell any spirituous liquors or wines to an Indian anywhere, either in or off of a reservation. Act of July 9, 1832, chapter 174, section 4, 4 Stat. 564, as amended by act of July 23, 1892, chapter 234, 27 Stat. 260, was held in *Sarlls* v. *United States,* 152 U. S. 570, 38 L. Ed. 556, 14 Sup. Ct. Rep. 720, not to prohibit the introduction and sale of lager beer into the Indian country, but, evidently in anticipation of the ruling of the court, and before the supreme court had passed upon the *Sarlls Case,* the Congress of the United States in 1892 amended the act of 1832 to read as follows:

''No ardent spirits, ale, beer, wine, or intoxicating liquor or liquors of whatever kind shall be introduced, under any pretense, into the Indian country. Every person who sells, exchanges, gives, barters, or disposes of any ardent spirits, ale, beer, wine, or intoxicating liquors of any kind to any Indian under charge of any Indian superintendent or agent, or introduces or attempts to introduce any ardent spirits, ale, wine, beer, or intoxicating liquor of any kind into the Indian country shall be punished by imprisonment for not more than two years, and by fine of not more than three hundred dollars for each offense.''

In the *Sarlls Case* the supreme court referred to section 2139, as recently amended, and made this significant statement in connection therewith:

"This would seem to show that Congress regarded the act, as it previously stood, as not including ale and beer in its terms. At any rate, the temptation to the courts to stretch the law to cover an acknowledged evil is now removed."

While this statement of the court perhaps was not called for in the decision of the case before it, it is, however, the expression of the highest judicial tribunal of this country to the effect that, according to its views, "ale and beer" could no longer be introduced into the Indian country or sold to Indians. It was this last congressional act from which our Constitution was taken, and, in so far as it was possible to use the same language and make it fit the conditions in this state, the same phraseology was employed. We find in no legislative act from any other state having for its object the regulation or suppression of the liquor traffic language similar or like the language used by Congress to protect the Indian tribes of this country and copied into our Constitution as the prohibitory law of this state.

In addition to the *Sarlls Case,* we have found one other case that makes reference to and discusses the features of section 2139, here involved, to wit, *United States* v. *Cohn,* 2 Ind. Ter. 474, 52 S. W. 38. The learned judge who delivered the opinion in the *Cohn Case* reviewed the history of congressional legislation for the protection of the Indian tribes of the country against the liquor evil, and not only discussed the section of law that Cohn was charged with violating, but also section 2139, from which our Constitution is copied. The court's reference to the reason for the amendment of 1892 of section 2139 is in the following words:

"It is a matter of the history of this country, so notorious as to become common knowledge here, that immediately after that decision [*Sarlls Case*] this country was flooded with lager beer. It was brought in by the carload, and drunkenness and rowdyism in their worst forms prevailed throughout the land. This condition of affairs was brought to the attention of Congress, which resulted in the prompt enactment of the above amendment. It will be noticed that the word 'other,' or any other limitation, does not follow 'ale and beer'; *and therefore*

*those liquors, in all of their forms, whether intoxicating or
not, were prohibited.* The language is, 'No ardent spirits,
ale, beer, wine or intoxicating liquors of whatever kind shall
be introduced,' etc.  Here *ale and beer were designated by
name,* and, as before stated, *without qualification or limita-
tion.*  There can be no question as to the construction of this
statute.''  (Italics ours.)

It will thus be seen that our prohibition amendment was a
federal law for over 22 years before it was adopted by this
state as a part of its fundamental law.  And the particular
word of most interest here, to wit, ''beer'' had been construed
by a United States court long before we appropriated it and
its context as ours.

The rule of law is well settled by the courts of some juris-
dictions that in the adoption of a statute of another sover-
eignty or state the construction placed upon such statute by
the courts of its origin is taken and adopted as much as the
statute itself when the evil sought to be remedied is the same.
Other courts refuse such binding sanctity of previous con-
struction, except when fortified by logic and reason.  But in
all the previous construction is looked to as of persuasive
force, and is adopted when sound and reasonable as applied
to conditions.  This is upon the evident theory and assump-
tion that those who lift a statute thus are familiar with its
construction and have considered its adaptability and fitness
as a whole to meet their conditions.  It was in 1899 that the
court of appeals of the Indian Territory, a United States
court, in the *Cohn Case,* decided that ''ale and beer, . . . in
all their forms, whether intoxicating or not, were prohibited.''
Fifteen years before we copied these words and their setting
into our laws their meaning had been defined.

It might be contended that a construction of section 2139,
of the Revised Statutes of the United States, was not involved
in the *Cohn Case,* and that therefore what was said in that
case was mere *dictum.*  It may be granted that the language
used in the *Cohn Case* in regard to section 2139, *supra,* was
unnecessary; yet, when that court spoke, its utterances became
a part of the history of the section and a light to those seek-
ing to learn its meaning in actual application.

We think it would be doing no violence to section 1 of the
prohibition amendment to the Constitution to stand on the

construction it had received by the federal court before we adopted it, and would be inclined to do so even in the absence of support from other courts; for we believe it is founded in reason and sustains the more effectually the purpose of its adoption.

But there is ample authority justifying the construction that an enumeration of a prohibited liquor without any qualification extends to it in all its forms, intoxicating and nonintoxicating.

It is the contention of appellant that the word "beer," as used in the Constitution, means an intoxicating liquor. He would insert the word "intoxicating" before the word "beer," and have it to read, "Every person who sells . . . intoxicating beer . . . shall be guilty," etc. In *State* v. *Spaulding,* 61 Vt. 505, 17 Atl. 844, the defendant was charged with violating this statute: "But no person shall sell or furnish cider . . . at or in a victualing house, tavern, grocery, shop, cellar, or other place of public resort."

It was the contention of the defendant that the word "cider," as used in the statute, meant an intoxicating drink. After some general observations as to the purpose and intent of the legislators, the court said:

"In view of all these facts, we think it would more likely be carrying out the legislative intent to construe the enactment according to its plain and common meaning, rather than to interpolate qualifying terms and hold that the legislature meant something different from what it said. We therefore hold that the prohibition as to the places named is absolute, regardless of the stage of fermentation or the intoxicating quality of the cider."

In the case of *Luther* v. *State,* 83 Neb. 455, 20 L. R. A. (N. S.) 1146, 120 N. W. 125, the defendant was charged with violating the following statute:

"All persons who shall sell, or give away, upon any pretext, malt, spirituous, or vinous liquors, or any intoxicating drinks" without having first obtained a license shall be deemed guilty of a misdemeanor, etc.

The particular charge was that the defendant had sold "certain malt and intoxicating liquor, to wit, malt tonic." The contention of the state was:

"That the proof upon the trial was conclusive that the liquor sold and kept for sale was 'malt liquor,' and therefore the selling and keeping for sale the liquors described was a violation of law, and the conviction should be sustained without any inquiry as to the intoxicating or nonintoxicating properties of the liquor."

It was contended by the counsel for defendant that:

"It was the legislative intent to suppress the sale of intoxicating liquors, and that, although the term 'malt liquors' is used in the act, yet it was not the purpose to prevent the sale of malt liquors or liquids, unless they contained a sufficient quantity of alcohol to produce intoxication, or, stated differently, that the language used in paragraphs 11 and 20 must be construed to mean as if it read 'intoxicating malt liquor.' I cannot read the statute in that light. As well might we apply the adjective to the words 'spirituous' and 'vinous.' It is my opinion that the legislature realized and appreciated the fact that malt, spirituous and vinous liquors are equally largely used as a beverage, and are alike injurious to the consumer, if not by producing immediate intoxication when taken in small quantities, by producing the same effect when more is taken, and at the same time creating an abnormal appetite which leads to dissipation and inebriety. At any rate the law prohibits the sale of 'malt liquors' without a license, and we must obey its plain mandate."

Another case of striking similarity in its law to the one at bar is *Kettering* v. *City of Jacksonville,* 50 Ill. 39. In that case the court said:

"It is also insisted that the court erred in refusing to instruct the jury that the prosecution must prove the beer sold to be of an intoxicating character. The objection is not well taken. · The charter of the city, in express terms, gave the city power to prohibit the sale of beer without defining its quality or character. The ordinance follows the language of the charter, and the proof shows that beer was sold. The city did not see proper to confine the prohibition to beer of an intoxicating quality, and we have no right to interpolate such a qualification. The city council may have supposed it important to prevent the establishment of any species of beer shops, in view of the fact that intoxicating drinks are so often sold in places which openly deal only in harmless bever-

ages. The existence of shops for the vending of any species of beer is certainly not important to the well-being of a community, and we are not prepared to say their prohibition is such an abridgment of the rights of the citizen that the legislature cannot clothe cities with that power.''

It would seem that the conclusion reached in the last three cases cited is founded upon reason, and is especially apposite when applied to our constitutional prohibition. The inebriating element of all the enumerated liquors is alcohol. That is true of ale, beer, wine and ardent spirits, such as whisky, rum and brandy. The percentage of alcohol differs greatly, ranging from a very low per cent in beer to. a very high per cent in whisky. According to the Standard Dictionary, small beer has but 1.28 per cent of alcohol. Lager beer, schenk beer, and bock beer vary in alcoholic content from 2 per cent to 7 per cent. Of course, when the Constitution specifically names ''beer'' as forbidden, it will be granted that it includes beer of a high alcoholic content, but it has named ''beer,'' and that word comprehends weiss and small beer, as well as bock, lager or schenk beer, and who shall say that less was meant than any or all of the known beers or drinks made by the process used in making beer? The percentage of alcohol in wine is from 7 per cent to 25 per cent. Can it be that in the use of the word ''wine'' in the Constitution only high-proof wines were meant? So with whisky, brandy and rum the alcoholic content differs, but they are all included in the words ''ardent spirits,'' and their sale condemned, whether they contain little or much alcohol.

''Intoxicating liquors of any kind'' we do not think qualifies and limits the meaning of the preceding named liquors to intoxicating liquors; for those liquors are prohibited *ex vi termini*, regardless of their ability to intoxicate. The expression ''intoxicating liquors of any kind'' is intended to cover liquors or admixtures of liquors not enumerated before, and, to sustain a charge of the illegal sale under it, it would be necessary to both allege and prove the liquor intoxicating; that is, that it will produce drunkenness when taken to capacity. Not so, however, with whisky, brandy, rum, ale, beer or wine. Their sale is prohibited by name, and a charge and proof of the sale of any of them by name, regardless of the alcoholic content, would sustain a conviction. This, we be-

lieve, would be conceded even by the appellant, except as to beer. But why this exception? The sale of none of them is *malum per se*, but the sale of any of them is bad, because prohibited by the statute.

In most, if not all, of the cases cited by appellant in his brief in which the word "beer" was defined and held to be an intoxicating liquor, the question arose under high license or prohibitory statutes making the traffic in intoxicating liquors an offense, and the courts of the country are divided as to whether the word in and of itself, when occurring in the pleadings or in the evidence, should be construed as meaning an "intoxicating liquor" as a question of law, or whether it is a question of fact for the jury. For instance, in the case of *State* v. *Carmody*, 50 Or. 1, 12 L. R. A. (N. S.) 828, 91 Pac. 446, cited by appellant, the court says:

"The courts are not in accord as to whether a charge of unlawfully selling intoxicating liquor is sustained by proof that the liquor sold was 'beer,' without anything giving to it a particular description, or evidence that it was intoxicating. In a number of decisions it is held that the word 'beer' is a generic term, including both a class of alcoholic liquors and a class of nonintoxicating beverages, such as 'root beer,' 'ginger beer,' 'spruce beer,' and the like, and therefore it cannot be said, in its ordinary meaning, to imply an intoxicating drink, unless such import has been given it, either by statute or by decisions of the courts. *Blatz* v. *Rohrbach*, 116 N. Y. 450, 6 L. R. A. 669, 22 N. E. 1049, is a leading example of this class of cases. But Mr. Black says that this is not the approved rule. 'On the contrary, the preponderance of authority is to the effect that when the word "beer" is used, without any restriction or qualification, it denotes an intoxicating malt liquor; that when thus occurring in an *indictment* or *complaint*, or in the *evidence*, it is presumed to include only that species of beverage; and that, being taken in this sense, it will be sufficient, unless it is shown by the evidence that the particular liquor so described is nonalcoholic.' " (Italics ours.)

The determination of the court in the *Carmody Case* would be applicable and demand thoughtful consideration by this court if the Oregon statute were the same as our Constitution. Under the Oregon statute, the crime consisted in the

sale of intoxicating liquors; under our Constitution, the crime
may be committed by selling ale, beer, wine or ardent spirits,
such as whisky, rum, brandy and gin. The *Carmody Case,
supra,* and *Briffitt* v. *State,* 58 Wis. 39, 46 Am. Rep. 621, 16
N. W. 39, relied upon by appellant, involved questions of
pleading and proof, and not the construction of a statute.
In both cases the offense was the selling of intoxicating
liquors, and the question was as to whether proof of the sale
of "beer" without any proof as to whether it was intoxicat-
ing or not was sufficient to authorize a conviction. Here we
are endeavoring to find out what the framers of this amend-
ment to our Constitution and the people who adopted it
meant when they used the word "beer" in the context in
which we find it. It is not a question of pleading or of evi-
dence, but is a question of construction of a statute.

We are forced to the conclusion that the word "beer," as
used in the Constitution, does not mean an intoxicating liquid
only, but also a nonintoxicating fermented malted liquor,
even though it be not intoxicating; that is, if the liquor be
"beer" as defined and historically known by the standard
lexicographers and by the courts, its traffic is forbidden by
the Constitution. If the article involved in this case falls
within the well-known definition of "beer," whether it be in-
toxicating or not, the appellant's act was criminal and sub-
jects him to punishment.

The court found that the liquid sold by appellant was beer,
and, if the finding is sustained by the evidence, the judgment
of conviction must be affirmed. We will first look into the
books to determine what beer is, and then apply the facts of
this case, and if the processes of manufacture used in mak-
ing what is here called "barette" are the usual processes in
manufacturing beer, and the article produced falls within the
definition of "beer," the conclusion reached by the trial court
must stand. The Century Dictionary's definition of "beer"
is as follows:

"Beer. 1. An alcoholic liquor made from any farinaceous
grain, but generally from barley, which is first malted and
ground, and its fermentable substance extracted by hot water.
To this extract or infusion hops or some other vegetable
product of an agreeable bitterness is added, and it is there-
upon boiled for some time both to concentrate it and to extract

the useful matter from the hops. The cooled liquor, with yeast added, is suffered to ferment in vats, the time of fermentation depending upon the quality and kind of beer, and after it has become clear it is stored away or sent to the market. 'Ale' and 'beer' were formerly synonymous terms, 'ale' being the earlier in use; at present, 'beer' is the common name for all malt liquors, and 'ale' is used specifically for a carefully made beer of a certain strength, and rather light than dark; thus small beer, ginger beer, and the like are not ale, nor are stout and porter.

"2. A fermented extract of the roots and other parts or products of various plants, as ginger, spruce, molasses, beet, etc."

Webster defines "beer" to be:

"1. A fermented liquor made from any malted grain, with hops and other bitter flavoring matters.

"2. A fermented extract of the roots and other parts of various plants, as spruce, ginger, sassafras, etc. Beer has different names, as small beer, ale, porter, brown, stout, lager beer, etc., according to its strength or other qualities."

The Standard Dictionary's definition is:

"1. An alcoholic beverage produced from various substances containing starch, usually barley, by first bringing the starch into a more soluble condition by malting, then heating the ground malt, during which operation the starch is changed into dextrin and glucose, afterward boiling the product with hops, and finally fermenting it with yeast, which decomposes the glucose into alcohol and carbon dioxid.

"2. A slightly fermented beverage made from infusion of roots, and other parts of various plants, as sassafras, ginger, spruce, etc., with molasses or sugar; as, ginger beer; root beer; spruce beer."

The Encyclopedia Britannica, eleventh edition, defines "beer" as:

"A beverage obtained by process of alcoholic fermentation, mainly from cereals (chiefly malted barley), hops, and water. . . . 'The manner of making this liquid is somewhat different in Gaul, Spain, and other countries, and it is called by different names, but its nature and properties are everywhere the same,' says Pliny in his Natural History."

In the same excellent work, it is said:

"Brewing, in the modern acceptation of the term, is a series of operations the object of which is to prepare an alcoholic beverage of a certain kind—to wit, beer—mainly from cereals (chiefly malted barley), hops, and water."

Joyce on Intoxicating Liquors, section 19, says "beer" is:

"A fermented liquor, chiefly made of malt. And the fact that beer is fermented liquor is one of which the courts will take judicial notice. Beer, as it is ordinarily understood and as it is defined in the dictionary, is a fermented liquor. It is made from malted grain with hops or from the extract of roots and other parts of various plants, such as spruce, ginger, and sassafras. It is known under various names and designated by such terms as ale, porter, strong beer, small beer, lager, spruce beer, and others."

Woolen and Thornton on the law of Intoxicating Liquors, section 34, adopt Webster's definition of the word "beer," and add:

"It will be observed that the primary meaning of the word 'beer' is a liquor infused with malt and prepared by fermentation."

When the word "beer" is used without any qualifying word, it is to be understood to mean a beer made of malt. As was said in *United States* v. *Ducournau* (C. C.), 54 Fed. 138:

"Malt liquor is defined to be a beverage prepared by infusion of malt, as beer, ale, porter, etc.; and beer is defined as a fermented liquor, chiefly made of malt. If then, beer is a liquor chiefly made of malt, and malt liquor is a beverage prepared by infusion of malt, beer is malt liquor, and malt liquor embraces beer. *Allred* v. *State*, 89 Ala. 112, 8 South. 56. I believe this is common knowledge, and that when one speaks of beer he must be understood to mean beer made of malt. The ordinary acceptation of the term 'malt liquor' imports a fermented liquor, made chiefly of malt, . . . as I have said. Now, there are other kinds of beer, made from vegetables, roots, and the like. When these are referred to, I think there is a prefix to the word beer; as for instance, spruce beer, cane beer, etc. My opinion, therefore, is that the general term 'beer,' as defined and commonly understood, refers to beer made from malted grain, and that when any

other kind of beer is meant a prefix must be added to indicate the kind referred to."

See, also, Woolen and Thornton on the Law of Intoxicating Liquors, section 34.

All the definitions given above agree that beer is made from some kind of cereal (usually barley), water and hops, and none of them define it as intoxicating. Before these ingredients become beer the process of fermentation must have been in operation, and the length of fermentation determines the percentage of alcohol in the liquor produced.

Barette, according to the testimony of the brewmaster, is made from barley, water and hops, and differs principally from higher grades of malted liquor in that the process of fermentation is arrested in its early stages. This is done in order to keep down the percentage of alcohol in the so-called barette. We gather from a reading of the books that it is nothing but what was formerly known as "small beer." In fact, the brewmaster, in his testimony, being interrogated by the court as to how barette was carbonized, recognized it as a form of beer. He explained to the court in this language:

"In barette we have a carbonator. It is a tank up about this high [indicating] and a screen in there with holes in it where the gas runs in on one side, and the beer runs in on the other side. The gas and beer mix themselves together, and it runs itself together under pressure in another tank."

This so-called barette was manufactured, according to the testimony, by the Copper City Brewing Company at its brewery, where also was manufactured beer. Both are the products of an industry known as brewing, and brewing, as defined by the Encyclopedia Britannica, is a process by which beer is made.

In describing a like decoction, the court, in *State* v. *Danenberg,* 151 N. C. 718, 26 L. R. A. (N. S.) 890, 66 S. E. 301, used language which we quote as fairly representative of the situation here:

"That it [near beer] is made by those who make beer, sold by those who sell beer, and drunk by those who drink beer, and that it looks like beer, smells like beer, and tastes like beer."

It seems that there can be no question that the beverage labeled and sold as barette by the appellant is a fermented

malt liquor, that beer is a fermented malt liquor; and that, therefore, regardless of the name by which it was known and sold, the said barette was, in fact and in truth, beer, and, regardless of its inability to intoxicate, is prohibited by the Constitution. Of course, the name by which it was called cannot affect its kind or quality. It is the stuff of which it is made, and not its name, that gives it place among the prohibited liquors named in the Constitution.

We find the word "beer," as it appears in our Constitution, first used in legislation for the benefit and protection of the Indian tribes of this country. It is hardly conceivable that the Congress, in using the word for that purpose and in that connection, intended to limit it to the known intoxicants manufactured and called by that name; the effort, no doubt, being to effectually protect the wards of the government, which could hardly be done unless the word was used in its broad, comprehensive and somewhat generic meaning, as including all malt liquors. In 1892, when the language of our Constitution was first employed by any legislative body, so far as we have been able to discover, "beer" was doubtless "the common name for all malt liquors," as it now is, whether of the intoxicating or nonintoxicating kind.

The judgment of the lower court is affirmed.

FRANKLIN and CUNNINGHAM, JJ., concur.

---

As to what liquors are within statutory restrictions as to the sale of "spirituous," "vinous," "fermented," and other intoxicating liquors, see note in 20 L. R. A. 645.

As to whether proof of sale of "beer" is sufficient to sustain a conviction under statutes prohibiting sale of vinous, malt, fermented or intoxicating liquors, see note in 25 L. R. A. (N. S.) 446; 48 L. R. A. (N. S.) 308.

As to whether statutes forbidding sale of a certain class of liquor include nonintoxicating liquor, see notes in 20 L. R. A. (N. S.) 1146; 26 L. R. A. (N. S.) 895; 46 L. R. A. (N. S.) 759. See, also, note in 7 L. R. A. (N. S.) 195, on proof of sale of "lager beer."