W. Edward LEE, Appellant,

v.

Mary E. ROBINSON, Appellee.

No. 6816.

Court of Civil Appeals of Texas.

Texarkana.

Sept. 8, 1955.

Rehearing Denied Oct. 13, 1955.

Lawrence & Lawrence, Tyler, for appellant.

James R. Lewis, Craven Beard, Tyler, for appellee.

DAVIS, Justice.

Mary E. Robinson, a feme sole, sued Blaine Dunbar, Mable Longstreth, individually and as executrix under the last will and testament of Annie M. Atkinson, deceased, Ada L. Talbot, a feme sole, W. Edward Lee, and his former wife, Hattie R. Lee, a feme sole, for damages for oil allegedly taken illegally from appellee's oil and gas lease which lease is situated in the I. C. Skillern Survey in Gregg County, Texas. Appellee owned a ¾ of the ⅞ interest in an oil and gas lease on 4.277 acres of land designated in the pleading as the Robinson-Skipper-Garner Lease; defendant Dunbar owned the other ¼ interest in said lease. All of the above named defendant owned an oil and gas lease upon a tract of land joining said 4.277 acre lease on the East, and designated in the pleading as the Dunbar-Skipper-Garner Lease. Plaintiff alleged that defendant Dunbar, acting for himself and as the agent of the other defendants, drilled three wells from the surface of their lease adjoining said 4.277 acre lease and bottomed them beneath said 4.277 acre tract; said wells were drilled on a curvature by a method called "whipstocking." The Tyler State Bank and Trust Company of Tyler and the Peoples National Bank of Tyler are made defendants because of liens held by them against certain interests in the lease belonging to some of the defendants but no relief was sought against them.

Appellee's petition contains about 28 pages with an exhibit attached. But this appeal concerns only the question of venue as a result of a plea of privilege filed by appellant, W. Edward Lee, which plea of privilege was duly controverted, tried before the court without the aid of a jury, and resulted in a judgment overruling said plea. Lee has duly perfected his appeal.

Hattie R. Lee was the only defendant residing in Smith County at the time of the filing of this suit against whom judgment was sought and appellee attempts to maintain jurisdiction in said county under subdivision 4 of Article 1995 which provides that a suit against two or more persons may be maintained in the county of the residence of either of said defendants.

Appellee alleged that she finally acquired her interest in said 4.277 acre oil and gas lease involved here about April 22, 1941, and which was finally awarded and partitioned to her by judgment of the District Court of Stephens County, Texas, on January 31, 1944, and partition agreement entered into on February 22, 1944. *She alleged that she learned of the illegal production of oil from her lease the latter part of December, 1952.* She alleged in section 5 of her petition that the defendant Hattie R. Lee acquired her interest in the adjoining lease from her former husband, W. Edward Lee, on or about August 11, 1953. She alleged in section 11 of her petition that from February 22, 1944, until shortly prior to the institution of this suit, the adjoining lease had been owned exclusively by all of the defendants, except the banks, but including defendant Hattie R. Lee, and other defendants who were not sued but later conveyed the interest, if any, held by them to appellee.

Appellee further alleged: "* * * that during said period, *from February 22, 1944,* said lease was operated as a unit, with each of the aforesaid common owners sharing, according as his or her interest appeared, in the profits and losses resulting from operation of the lease, sharing in that proportion in the proceeds from oil sales and bearing in that proportion the costs and expenses incurred in operating said lease and in drilling and reworking oil wells situated thereon in whole or in part; that throughout said period and at all times material to this controversy the defendant Blaine Dunbar, being then duly authorized and appointed by each of the members of

said partnership so to do, acted as the managing partner of said partnership, in which capacity he was and is in possession of and in active and immediate authority over drilling and producing operations carried on upon said lease, all such matters, operations, and activities being within the scope of the partnership business and within the scope of the authority so delegated to the defendant Blaine Dunbar, for all of which reasons plaintiff says that each of the defendants herein is jointly and severally liable for all injuries suffered by plaintiff and proximately caused by the wrongful acts of Blaine Dunbar committed in the exercise, and within the scope, of the authority to him so granted." And appellee alleged that large quantities of oil were produced from the three wells surfaced on defendant's lease and bottomed beneath plaintiff's lease and that such oil: "* * * was wrongfully converted to their use and benefit * * *" (Said wells involved here being designated in the pleading as wells Nos. 3, 4 and 5).

Appellant brings forth one assignment of error which complains of the action of the trial court in overruling his plea of privilege because appellee failed to prove a cause of action against the resident defendant, Hattie R. Lee.

It is now well settled that in order to establish venue under sub-division 4 of Article 1995, the following facts must be alleged and proved:

1. There must be two or more defendants.

2. One or more of the defendants must reside in the county in which the suit is filed.

3. One or more of the defendants must reside in another county.

4. There must be a proper joinder; that is, those joined as defendants must all be proper parties to the suit.

5. There must have been a cause of action alleged against both the resident and non-resident defendants.

6. There must be proof of a valid cause of action against the resident defendant.

We are only concerned on this appeal with the sixth requirement above and in support of that requirement we cite Compton v. Elliott, Tex.Com.App., 88 S.W.2d 91, opinion adopted by the Supreme Court; Boger v. Leyendecker, Tex.Civ.App., 209 S.W.2d 210; Stewart v. McLean, Tex. Civ.App., 210 S.W.2d 274; and the authorities cited in the foregoing cases. As pointed out by Judge Smedley in the case of Stock Yards National Bank v. Maples, Tex.Com.App., 127 Tex. 633, 95 S.W.2d 1300, 1302, citing Caprito v. Weaver, Tex. Civ.App., 77 S.W.2d 595, "* * * another venue fact which the plaintiff is required to plead and *prove* has been added to exception 4 by judicial construction. It is that the plaintiff to prevent the change of venue must also plead and *prove* that he has in fact a cause of action against the resident defendant." (Emphasis ours.)

Appellee proved the ownerships alleged as well as the curvature or whip-stock drilling of wells Nos. 4 and 5 from the surface of defendants' lease to a point beneath the surface of said 4.277 acre lease, ¾ of which was owned by appellee. They then placed their witness S. I. Dindinger upon the witness stand and attempted to prove by him that wells Nos. 3, 4 and 5 had produced their allowable of oil from February 22, 1944, down to date. Dindinger's testimony shows that he was the regular switcher for all three wells involved here from the time they were drilled until "sometime in December of 1952." He testified that these wells produced their allowables at all times "until the time I quit switching." He further testified:

"Q. Well, you are testifying up until the time you quit working on those wells? On those wells.

"A. Yes, Sir."

The nearest proof of any production during the period of time of ownership by the defendant Hattie R. Lee is found on page 98 of the Statement of Facts when Din-

dinger was asked the following question and gave the following answer:

"Q. Did you have occasion during the past two years to be there at times when wells Nos. 4 and 5 were running?

"A. Yes, Sir."

This testimony does not show whether such occasion or occasions were before or after Hattie R. Lee acquired her interest in said lease owned by defendants.

Appellee takes the position that the testimony of Dindinger is sufficient to show production. With this contention we do not agree as hereinafter pointed out.

■ There is a stipulation in the Statement of Facts as follows:

"Let the record show that it is stipulated between the parties that at no time since 1948 has the allowable of oil in the Dunbar-Skipper-Garner lease been less than 20 barrels per day on each well nor less than 15 producing days per month during that period of time."

Appellee takes the position that production of oil from the wells involved in this suit can be presumed as a matter of law because of the allowable fixed by the Railroad Commission of Texas, but she cites no authority. Even though the evidence is sufficient to show that the wells were capable of producing oil during the period of time involved from the standpoint of the testimony of witness Dindinger and the Railroad Commission allowable, it is not sufficient to show actual production and such production would have to be presumed.

■ There is no testimony or evidence in the record that will support a finding by inference or presumption that the defendant Dunbar was the agent of defendant Hattie R. Lee, or that the defendant Hattie R. Lee wrongfully received or wrongfully converted any of the oil produced or proceeds therefrom from said wells during the period of time involved.

There is no evidence that would support a judgment against Hattie R. Lee, and if the case had been tried before a jury upon the evidence adduced upon this hearing, it would have been incumbent upon the trial court to have granted a motion for an instructed verdict in favor of the defendant Hattie R. Lee. Even if the law does not require a showing to the extent that the amount of the judgment to be recovered must be shown on a venue trial, it is necessary to show a right to some form of recovery against the resident defendant.

Appellee strongly urges in her brief that the evidence in this case is sufficient to show a cause of action against the resident defendant, Hattie R. Lee, and makes the following statement: "It might as well be said that if A unlawfully takes and sells B's horse, dividing the proceeds of the sale with C, the latter in any event retain his share of the fruits of A's wrong, unless it be shown that C knowingly participated in or authorized the theft. No such doctrine has ever been a rule of American property law; it is elemental that one cannot acquire title to stolen property in the hands of one other than the rightful owner."

Appellee's position in such a case is correct, but if A unlawfully takes and sells B's horse, dividing the proceeds of the sale with C, B must show that C received a part of the proceeds before he could recover from C. The mere showing that A and C were joint owners of a mule barn or were partners in the horse business would not be sufficient to show that C received part of the proceeds from the sale of B's horse.

■ In this case proof was readily available to appellee from the Railroad Commission of Texas to show the actual amount of oil produced, if any, from said wells as reported to the Railroad Commission during the time material here. Appellee could have secured from the pipe line company or companies taking the oil from said wells and shown the exact amount, if any received by the resident defendant, Hattie R. Lee. This she failed to do.

Therefore, when we view the record as a whole, taking into consideration the fact that appellee alleged that she first knew of the illegal taking of the oil in December 1952, before the resident defendant, Hattie R. Lee, acquired her interest in August 1953, it was incumbent upon the appellee to have at least proved the following facts:

1. That oil was actually produced from the wells after August 11, 1953; and

2. That the defendant Hattie R. Lee actually received a part of said oil or the proceeds therefrom.

These she failed to prove. We cannot presume, first, that oil was actually produced from said wells after August 11, 1953 (appellee having shown that she knew of the illegal production about eight months prior thereto), then, second, we can not presume upon the first presumption that the resident defendant, Hattie R. Lee, received and appropriated any of the oil, or proceeds therefrom, to her own use and benefit as alleged by appellee. 57 Tex.Jur. 247, Sec. 57.

The testimony and evidence, if any, required to show a cause of action against the resident defendant being available to the appellee and she having failed to make use of same, appellant's plea of privilege should have been sustained. Such is the holding by the Commission of Appeals in Stock Yards National Bank v. Maples, supra. We quote:

"The plaintiff had sued the pipe line company and Langford in the county of the pipe line company's domicile as joint tort-feasors in the conversion of oil. It was held, citing Richardson v. D. S. Cage Company [113 Tex. 152, 252 S.W. 747], that Langford's plea of privilege should have been sustained because the plaintiff on the trial failed to prove liability on the part of the pipe line company either alone or jointly with Langford." See also Boger v. Leyendecker, supra.

Appellant's point of error is sustained, and appellee having failed to prove liability on the part of the resident defendant, appellant's plea of privilege should have been sustained. Such is the holding in Stock Yards National Bank v. Maples, supra.

The judgment of the trial court is reversed and judgment is here rendered sustaining the plea of privilege of the appellant, W. Edward Lee.

Reversed and rendered.