Dr. J. H. MILES, Appellant,

v.

C. B. MEADOWS et ux., Appellees.

No. 15357.

Court of Civil Appeals of Texas.

Dallas.

Jan. 17, 1958.

J. Edwin Fleming and Stephen L. Mayo, Dallas, for appellant.

Akin & Vial, Dallas, for appellees.

YOUNG, Justice.

This is a venue case; appellant asserting right to be sued at the place of his residence —Tarrant County. Appellees' suit was for damages against Dr. Harry H. Taylor of Dallas County and appellant Dr. Miles, alleging personal injuries suffered by Mrs. Meadows through negligence of defendants in a surgical operation—a hysterectomy— performed on her May 29, 1956. To this venue plea, plaintiffs by controverting affidavit invoked the provisions of subd. 4, Art. 1995, V.A.C.S. Upon due hearing the plea of privilege was overruled, and the appeal is from such adverse order.

Gravamen of charges against defendants was, in the main, of negligence in course of operation resulting in (1) either cutting or ligating both of Mrs. Meadows' ureters; (2) cutting a hole in bladder and vagina, which they failed to repair; (3) in then failing to investigate or correct her immedate condition of anuria (defective secretion of urine), thus rupturing her ureters; and (4) failing to investigate or correct her later uncontrollable voiding of urine.

The operation was performed at Miles Clinic, Grapevine, Tarrant County; on the date stated Mrs. Meadows undergoing removal of uterus on advice of Dr. Taylor. She had previously undergone an appendectomy in 1934 or '35, also removal of ovaries in 1942. She had had trouble with kidneys and urination for a number of years but testified to no trouble along that line just before the 1956 operation, outside of a burning sensation; after the surgery in question, remaining in the Clinic until June 11 when she was discharged.

These further post-operative facts appear practically without dispute: That for 48 hours she voided no urine save for "a few drops", then starting to urinate uncontrollably through the vagina (not through the urethra). This condition did not abate after dismissal from the Miles Clinic and on July 11 she was admitted to Baylor Hospital, Dallas, as a patient of Dr. Elgin Ware who testified to finding, upon examination, a vesicovaginal fistula, no function of left kidney, and delayed function of right kidney. Dr. Ware performed a nephrotomy (kidney operation—placement of tubes in each kidney to divert urine and attempt to conserve the renal function) on Mrs. Meadows July 18, 1956. Three months later he repaired the fistulas; in November performing abdominal surgery on the patient and relieving strictures found in each ureter.

Mrs. Meadows lived at Lewisville, Denton County, where Dr. Taylor resided and practiced at time of the 1956 surgery; he having been this lady's physician in previous years. Both defendants were osteopathic physicians and surgeons. The witnesses (Drs. Pritchard and Ware), relied on by plaintiffs to establish a prima facie case under subd. 4, belonging to the allopathic school of medicine. They had never

been associated with the osteopathic school; strenuous objections being made to their testimony in full on these grounds. In fact, appellant's ten points of error relate almost entirely to the admissibility and sufficiency of the evidence adduced by plaintiff. His points are, in summary, (1) that appellees failed to make proof of a bona fide claim against the resident defendant and absence of competent evidence to establish a prima facie cause of action; (2) no competent proof of negligence and proximate cause as against resident defendant; (3) error in overruling his objections to testimony of Drs. Pritchard and Ware, physicians of a different school of practice, relative to the issues of negligence and proximate cause; (4) appellees' failure to establish by the testimony the standard of care required in locality where the surgery was performed, and that such standard was not observed by the resident defendant; (5) the court's failure to give effect to the legal presumption in favor of defendant physicians with respect to the elements of negligence and proximate cause.

Subd. 4, Art. 1995, V.A.C.S., reads in part: "Defendants in different counties. —If two or more defendants reside in different counties, suit may be brought in any county where one of the defendants resides." Under this exception it is incumbent upon the plaintiff to prove the allegations of his petition to the extent of showing against the resident defendant a bona fide cause of action. Richardson v. D. S. Cage, 113 Tex. 152, 252 S.W. 747; 43–B Tex.Jur., sec. 172, p. 434. In this connection, our Supreme Court has held in Bowles v. Bourdon, 148 Tex. 1, 219 S.W.2d 779, 782, 13 A.L.R.2d 1: "It is definitely settled with us that a patient has no cause of action against his doctor for malpractice, either in diagnosis or recognized treatment, unless he proves by a doctor of the same school of practice as the defendant: (1) that the diagnosis or treatment complained of was such as to constitute negligence and (2) that it was a proximate cause of the patient's injuries." A limitation of above general rule is stated in Porter v. Puryear, 153 Tex. 82, 262 S.W.2d 933, 264 S.W.2d 689; in effect, that testimony of physicians of a different school is competent (1) where the subject of inquiry is common to and equally recognized in all fields of practice; or (2) relates to the manner and use of electrical or mechanical appliances commonly used in all fields of practice.

The questions raised by appellant require a further resort to the record. According to Dr. Ware, the blockage of ureters and nonfunctioning of kidneys (Mrs. Meadows) was revealed by catheterization and X-ray; that the ureters had fistulas (appertures)—also the bladder and vaginal wall—allowing urine to flow through the pelvic cavity (avoiding bladder and urethra) for uncontrollable escape through the vagina; that the described condition was of recent origin, strictures of ureters in all probability caused by catgut ligation or clamping, later replaced by necrotic tissue when the catgut had dissolved; that if the patient did not void for 24 hours following such an operation she should be cystoscoped and efforts made to fully catheterize; and if you couldn't, "then you can assume that some type of obstruction exists and something should be done about it."

Dr. Taylor, defendant, testified that, following a hysterectomy, if the patient did not void after 12 hours he "would begin to wonder about it"; that he knew of the danger of ligating one or both ureters—it was "something you have got to know about, the same as anything else when you pick up a knife." Relative to the cause of anuria (the post-operative condition of Mrs. Meadows), that he did not catheterize above the bladder because he "didn't think there was any need for it"; inspected her bladder and vagina for fistulas but didn't see any. Dr. Taylor further testified on cross-examination: "Q. Mr. Vial: Insofar as Dr. Pritchard outlined the danger of cutting a hole in the bladder and not finding it and repairing it before you leave the operative field, that also is a danger incident to

hysterectomy like the one you did on Mrs. Meadows, isn't that right? A. As I understand your question that there is danger of cutting the bladder and not repairing it— is that your question? Q. My question is this: that the danger outlined by Dr. Pritchard in his field, of leaving a fistula in the bladder, unrepaired, following hysterectomy, do you not agree that that is a danger incident to the hysterectomy that you did on Mrs. Meadows? A. That would be danger, yes. If a man was doing that type of work, he should realize that those things can happen, and for that reason, always check to see that the bladder is all right, that the ureter is all right, before he comes out of there." He denied to inadvertently opening the bladder of Mrs. Meadows during the May surgery, or of cutting or ligating one or both of her ureters.

Both Drs. Pritchard and Ware, plaintiffs' witnesses, were Dallas specialists, one in the field of obstetrics and gynecology, the other in urology. Dr. Ware had never performed a hysterectomy. Dr. Pritchard testified at length to the procedure involved in such an operation; in answer to hypothetical question, that the condition of Mrs. Meadows would indicate that at time of prior surgery there had been a complete or partial ligation of ureters, causing a stricture thereof. Neither witness had ever practiced in Grapevine or Lewisville, or in any city smaller than Dallas.

Dr. Taylor has performed hysterectomies in Lewisville, his former residence, now practicing osteopathic surgery in Dallas;

the named smaller towns being some twenty miles away. He testified to the various steps taken in operating on Mrs. Meadows, the surgical procedure not differing in any material respect from the method narrated by Dr. Pritchard; and appellee in reply brief correlates this similarity in operative methods, use of equipment and attendant dangers. If the methods, training and dangers incident to the operation in question are common to both schools of medical practice and equally recognized, the testimony of Drs. Pritchard and Ware, in our opinion, is brought well within the qualification announced in Porter v. Puryear, supra.

As regards appellant's further points— negligence, proximate cause, standard of care, etc.—the evidence adduced by plaintiffs tended to prove acts and omissions (denied by Dr. Taylor) that would amount to negligence in any locality, large or small. As observed by appellee, the parties agree that no surgeon of any school should leave a patient, following a hysterectomy, with blocked ureters and fistula in both bladder and vagina; thus establishing a standard of care referable to surgeons, both osteopathic and allopathic.[1]

■ For venue purposes appellees' cause of action against the resident defendant Taylor has support in sufficient and admissible testimony. All points of error thus generally discussed are deemed without merit and the order overruling plea of privilege is accordingly affirmed.

1. Defense counsel elicited from Drs. Pritchard and Ware on cross-examination that these acts or omissions may be committed inadvertently even when the most skillful surgeon, as distinguished from a general practitioner, performs a hysterectomy, thereby necessitating a subsequent operation. Such testimony has relevancy to defenses assertable upon a trial to the merits.