415 P.2d 129

Samuel F. TURNER, individually, and dba Turner & Associates, and Paul A. Manera, individually and dba E. R. Geophysical Company, Petitioners,

v.

The SUPERIOR COURT of the State of Arizona, IN AND FOR the COUNTY OF PIMA, the Honorable Richard N. Roylston, Judge thereof, Rail N Ranch Corporation, an Arizona Corporation, Lloyd W. Golder, III, and Helen T. Golder, husband and wife; Lloyd W. Golder, Jr., and Esther B. Golder, husband and wife, Respondents.

No. 2 CA–CIV 227.

Court of Appeals of Arizona.
June 6, 1966.
Rehearing Denied Aug. 8, 1966.

McKesson, Renaud, Cook & Miller, by J. Gordon Cook, Phoenix, for petitioners.

Odgers & Barker, by Vincent E. Odgers and J. Emery Barker, Tucson, for respondents.

MOLLOY, Judge.

In the court below, the plaintiffs-respondents instituted an action against multiple defendants, including the petitioners herein. The defendants were all served with process in counties other than Pima County with the sole exception of one Mike Pintek, a resident of Pima County employed by the Arizona Highway Department. On motion to dismiss for failure to state a claim on which relief could be granted, judgment was entered dismissing the complaint against several defendants, including Mike Pintek, State of Arizona, and the Arizona Highway Commission. Petitioners' application for a

change of venue, however, which was considered by the trial court in conjunction with the motion to dismiss, was denied, and petitioners-defendants seek certiorari in this court.

For the sake of convenience, the parties will be denominated, as below, "plaintiffs" and "defendants."

Plaintiffs undertook the construction of a dam, to be called Golder Dam, on the Canada del Oro in Southern Pinal County, Arizona. Pursuant to Tit. 45, Ch. 3 of the Arizona Revised Statutes, the plaintiffs submitted proposed construction plans and specifications to the Arizona Highway Department and paid $6,225 in application fees (A.R.S. § 45–704). Subsequent to approval of the plans and specifications for the dam by the Arizona Highway Department, changes were proposed by the defendants-contractors, assented to by the plaintiffs, and approved by the Arizona Highway Department. The dam failed to hold water as contemplated and, relative to the Arizona Highway Department and its agents, the plaintiffs alleged negligence in the approval of the plans and specifications, and generally, in its investigations and inspections.

The defendants, State of Arizona, the Arizona Highway Commission, named members thereof, and other state agents and employees, including Mike Pintek, timely moved to have the complaint dismissed as to them on the grounds that (1) the action was specifically barred by A.R.S. § 45–715, (2) that the state engineer and his employees were not under a duty to use due care to see that the plaintiffs' dam was so designed or constructed as to serve plaintiffs' purposes, i. e., to hold water, and (3) that A.R.S. § 12–821 and the Arizona Constitution provides a procedure for making a claim against the state and that such procedure was not followed by the plaintiffs.

The plaintiffs opposed the motion to dismiss contending that (1) governmental immunity had been abrogated in Arizona, (2) that the State of Arizona cannot, constitutionally, require the plaintiffs to submit the construction of a structure to the absolute control and supervision by the state, under threat of heavy penalty or total or partial destruction of the improvements, and at the same time deny all liability or responsibility therein, since such conduct amounts to a "taking" of the plaintiffs' property without due process of law, and (3) that the abrogation of governmental immunity likewise served to eliminate the necessity of following the provisions of A.R.S. § 12–821 regarding tort claims against the state.

The trial court granted the defendants' motion to dismiss and we must determine the propriety of that action, for if the action against the defendant Mike Pintek were wrongfully dismissed, the venue of this action was properly brought in Pima County, the county of this defendant's residence. A.R.S. § 12–401(7).

A.R.S. § 45–715 provides:

"Liabilities of state and owners of dam in action for damages

"A. No action shall be brought or maintained against the state, the state engineer or his employees or agents for damages sustained through the partial or total failure of any dam or its maintenance by reason of his control and regulation thereof.

"B. Nothing in this article shall relieve an owner or operator of a dam from the legal duties, obligations and liabilities arising from such ownership or operation."

The statute is clearly applicable, and precludes a claim against the only Pima County resident, Mike Pintek, whose alleged negligence was as an employee of the state, unless the plaintiffs' charge of unconstitutionality is sustainable. The decision of our Supreme Court in Stone v. Arizona Highway Commission, 93 Ariz. 384, 381 P.2d 107 (1963), is the sole authority relied upon by the plaintiffs contending that A.R.S. § 45–715 cannot control.

In Stone, the Supreme Court said:

"After a thorough re-examination of the rule of governmental immunity from tort

liability, we now hold that it must be discarded as a rule of law in Arizona and all prior decisions to the contrary are hereby overruled.

\* \* \* \* \* \*

"It has been urged by the adherents of the sovereign immunity rule that the principle has become so firmly fixed that any change must come from the legislature. In previous decisions \* \* \* this court concurred in this reasoning. Upon reconsideration we realize that the doctrine of sovereign immunity was originally judicially created. We are now convinced that a court-made rule, when unjust or outmoded, does not necessarily become with age invulnerable to judicial attack. This doctrine having been engrafted upon Arizona law by judicial enunciation may properly be changed or abrogated by the same process."

Stone v. Arizona Highway Commission, 93 Ariz. 384, 387, 393, 381 P.2d 107, 109, 113 (1963)

■ We are of the opinion that the Stone decision does not go so far as plaintiffs' contentions. The Stone decision was directed at the common law doctrine of total governmental immunity from tort liability. That doctrine, as indicated in Stone, has, over the years, been eroded legislatively and judicially until various courts, including those of Arizona, have finally abrogated the doctrine altogether. The abrogation, however, of a judicial doctrine, does not work an automatic cancellation of specific legislative enactments. In Stone no statute was tested and found unconstitutional. We are therefore unable to accept the plaintiffs' contention that the Supreme Court's action in Stone negated the legislature's determination, as expressed in A.R.S. § 45–715, that the state, its agencies and agents, are not subject to tort liability where a private citizen builds a dam on private property and the dam fails, in whole or part, to hold water.

■ Without citation of further case law, the plaintiffs charge that the statute is unenforceable on the constitutional ground that it constitutes a taking of property without due process. General principles govern judicial inquiry into legislative declarations of public policy. This court will not inquire into the wisdom, justice, or expedience of a statutory enactment. Brown v. Greer, 16 Ariz. 215, 141 P. 841 (1914), Schrey v. Allison Steel Mfg. Co., 75 Ariz. 282, 255 P.2d 604 (1953).

■ The law making power reposing in the legislative body of a state of this union is extremely broad:

"Subject only to constitutional limitations and excepting only those subjects delegated to the federal government or prohibited by the federal Constitution, as discussed in Constitutional Law § 70, state legislatures have power to enact statutes or laws, which power has been characterized in various ways, such as absolute, plenary, or supreme. Furthermore, while the authority must be exercised within the legislative scope, the legislature has the authority and it is its duty, on occasion, to deal with every element of human experience involved in the life of the community, and in the exercise of this authority, and in the discharge of this duty, the sweep of its vision is as wide as the confines of human knowledge. Thus, subject to constitutional limitations, a state legislature may enact any statute it deems necessary for the public interest, and in the exercise of that authority may frame its enactments and express its intention and purpose as it sees proper."

82 C.J.S. Statutes § 9, pp. 23–24 (1953)

■ These principles have been recognized and asserted in Arizona. The legislature has all power not expressly denied it or given to some other branch of the government. Adams v. Bolin, 74 Ariz. 269, 247 P.2d 617 (1952); State v. Harold, 74 Ariz. 210, 218, 246 P.2d 178, 183 (1952); Roberts v. Spray, 71 Ariz. 60, 223 P.2d 808 (1950); Atchison, Topeka & Santa Fe Railway Company v. State, 33 Ariz. 440, 265 P. 602, 58 A.L.R. 563 (1928); McBride v. Kerby, 32 Ariz. 515, 260 P. 435 (1927).

As said in State v. Harold, supra:

"The power of the legislature in the exercise of its legislative function is measured by the power of absolute sovereignty except as limited by the state constitution and the constitution and laws of the Federal Government. Earhart v. Frohmiller, 65 Ariz. 221, 178 P.2d 436." 74 Ariz. at 218, 246 P.2d at 183.

In Giss v. Jordan, 82 Ariz. 152, 159, 309 P.2d 779, 783 (1957), our Supreme Court said:

"The Arizona Legislature is vested with the legislative power of the state, and has plenary power to deal with any subject within the scope of civil government unless it is restrained by the provisions of the Constitution." 82 Ariz. at 159, 309 P.2d at 783.

■ By virtue of the attitude which we are constrained to assume with respect to legislative enactments, and in the absence of case law supporting respondents' contentions, we remain unconvinced that plaintiffs have sustained a constitutional objection to A.R.S. § 45–715.

In view of our decision, we defer consideration of the effect of the plaintiffs' failure to follow the prescribed procedure (A.R.S. § 12–821) for pursuing a claim against the state, and pass on to the petitioners' contention that, there being statutory immunity as to the only resident-defendant, they are entitled to have the action removed from Pima County. Those sections of the Arizona venue statute (A.R.S. § 12–401) which are pertinent provide:

"12–401. Venue

"No person shall be sued out of the county in which he resides, except:

*    *    *    *    *    *

"7. When there are several defendants residing in different counties, action may be brought in the county in which any of the defendants reside.

*    *    *    *    *    *

"10. When the foundation of the action is a crime, offense or *trespass* for which an action in damages may lie, the action may be brought in the county in which the crime, offense or trespass was committed or in the county in which the defendant or any of the several defendants reside or may be found, * * *." (Emphasis added.)

The Arizona Supreme Court has held that where venue is originally proper it will not be changed and that, for purposes of determining the propriety of venue, the court " * * * must look to the complaint * * *" and construe it liberally in favor of the pleader. Tribolet v. Fowler, 77 Ariz. 59, 61, 266 P.2d 1088, 1089 (1954); Pride v. Superior Court, 87 Ariz. 157, 160, 348 P.2d 924, 927 (1960).

However, we do not believe our court intended by these decisions to hold that the allegations of the complaint must be looked at in a vacuum, without regard to any statutory or case law clearly negating the cause of action stated. Our Supreme Court cited with approval, in support of the Tribolet v. Fowler quotation (supra), Highway Motor Freight Lines v. Slaughter, 84 S.W.2d 533 (Tex.Civ.App.1937). In the latter decision the Texas court held that the complaint is the " * * * best and all-sufficient evidence of the nature of an action" (84 S.W.2d 536), but implicitly approved the procedure followed in the lower court of holding an evidentiary hearing to determine whether the actual facts justified the laying of venue outside the residence of the petitioning defendants. We are not here concerned with " * * * the nature of an action," but whether there is a cause of action against a resident-defendant.

In Pride v. Superior Court, supra, the Supreme Court also said:

"Tribolet v. Fowler * * * teaches that in determining venue the court, *inter alia*, properly looks to the complaint * * *." (Emphasis added.)

87 Ariz. at 160, 348 P.2d at 927.

■ The Arizona venue statute was taken from the State of Texas. Texas decisions are therefore particularly of interest. Brown v. State, 17 Ariz. 314, 152 P. 578 (1915); Pride v. Superior Court, 87

Ariz. 157, 161, 348 P.2d 924, 927 (1960). The question of the effect of a dismissal, subsequent to the filing of a complaint, of the defendant on whom venue depends has been frequently determined by the courts of Texas.

In Texas, it appears clear that on a challenge to the venue, the court will go behind the allegations of the complaint to determine at a special hearing whether the plaintiff has a " * * * bona fide cause of action" against the defendant upon whose residence the venue is predicated. Stockyards National Bank v. Maples, 127 Tex. 633, 636, 95 S.W.2d 1300 (1936); Lee v. Robinson, 282 S.W.2d 397 (Tex.Civ.App. 1955); Harris v. Cleveland, 294 S.W.2d 235 (Tex.Civ.App.1956); Miles v. Meadows, 309 S.W.2d 284 (Tex.Civ.App.1958).

In Miles v. Meadows, 309 S.W.2d 284 (Tex.Civ.App.1958), it was said:

"Subd. 4, Art. 1995, V.A.C.S., reads in part: 'Defendants in different counties —If two or more defendants reside in different counties, suit may be brought in any county where one of the defendants resides.' Under this exception it is incumbent upon the plaintiff to *prove* the allegations of his petition to the extent of showing against the resident defendant a bona fide cause of action." (Emphasis added.)

In Stockyards National Bank v. Maples, 127 Tex. 633, 636, 95 S.W.2d 1300, 1302 (1936):

" * * * another venue fact which the plaintiff is required to plead and *prove* has been added to exception 4 by judicial construction. It is that the plaintiff to prevent the change of venue must also plead and *prove* that he has in fact a cause of action against the resident defendant." (Emphasis added.)

Some jurisdictions emphasize the "good faith" of the plaintiff and hold that if the plaintiff joined the resident-defendant in the bona fide belief that he had a cause of action against such resident-defendant, the fact that he had no cause of action, or that he dismissed his complaint against the latter, does not impair the propriety of the venue against the nonresident-defendant. See Annot., 93 A.L.R. at pp. 952–954.

This "good faith" qualification of what has been called the general rule, 93 A.L.R. 949, 56 Am.Jur. Venue § 31, has not been mentioned or followed in the Texas decisions upon which plaintiffs rely. There is Texas authority to the effect that the plaintiff's "good faith" belief that he has a cause of action against the resident-defendant is insufficient to sustain venue against a nonresident-defendant. Edwards v. Buchanan, 14 Tex.Civ.App. 268, 36 S.W. 1022 (1896); Gladish v. Neeley, 248 S.W. 751 (Tex.Civ.App.1923).

■ We are not favorably inclined to adopt the "good faith" rule due to our conviction that such a subjective standard would be an invitation to litigation, and often litigation in which a lawyer would be a star witness. Neither are we enamored with the Texas rule which, on challenge to the venue, requires a trial before trial to determine whether venue is properly laid. We refuse to choose between the unpleasant horns of this dilemma because we believe it to be unnecessary for the purposes of this case. We hold that in "looking to" a complaint to determine whether a cause of action has been stated it is necessary to go at least sufficiently aliunde the complaint so as to read with the complaint a statute clearly negating the cause of action attempted to be stated.

In Texas it has been held that, for matters of pleading venue, a plaintiff will be held to have knowledge of a law preventing the liability of a resident-defendant on whom venue is predicated. Gladish v. Neeley, 248 S.W. 751 (Tex.Civ.App.1923).

In Gladish, it was said:

"A state bank has no authority under its charter to engage in a guaranty or surety business, and if any guaranty was given by the bank to appellee it was ultra vires and unenforceable. The good faith of appellee in seeking to hold the bank on such a guarantee does not effect [sic] the question, because he [plaintiff] is

**420**

held to a knowledge of the law applicable to the fact upon which he relies to sustain his case."

248 S.W. at 754.

■ This position is in line with a body of Arizona case law, as for instance, the decisions of our Supreme Court relating to the consideration of statutes of limitation on motions to dismiss for failure to state a claim. Ross v. Ross, 96 Ariz. 249, 393 P.2d 933 (1964), Hyder v. Shamy, 45 Ariz. 130, 40 P.2d 974 (1935). When A.R.S. § 45–715 is read with the complaint, it becomes inescapably clear that the complaint has not alleged a cause of action against the resident-defendant, Mike Pintek.

■ The complaint is silent as to any alleged tortious act occurring in Pima County on which venue could be based. In resisting the motion for change of venue the plaintiffs advanced the contention that a "trespass" occurred in Pima County in that there was a delivery by one of the defendants of a report recommending deviations from the original specifications, which deviations, the plaintiffs assert, led to the failure of the dam. The complaint sounds both in contract and tort. Many activities are alleged to have been negligently performed, i. e., in the making of investigations and tests, in the rendering of reports, in the performing of engineering services, and in the failure to warn. Only the delivery of one report is shown to have occurred in Pima County. The dam was constructed in Pinal County. All acts of investigation, research, sampling, and construction occurred in counties other than Pima. The report in question was prepared outside Pima County. We hold that the incidental act of delivery of the one report does not change the basic nature of this action, which, to the extent that it is one in tort, is for a "trespass" occurring in counties other than Pima.

It has previously been held that since the 1960 amendment to the Constitution, Art. 6, § 13, A.R.S., venue is not jurisdictional. Sil-Flo Corporation v. Bowen, 98 Ariz. 77, 402 P.2d 22 (1965). However, we have held that when there is a clear violation of the mandate of A.R.S. § 12–404, subsec. B that the trial court " * * * shall order the action transferred to the proper county," the same should be corrected on special writ. Goff v. Superior Courts, 2 Ariz.App. 344, 409 P.2d 60 (1965). We believe this to be the case here. The plaintiffs have failed to state a claim against the defendants which would allow venue in Pima County. We hold therefore that the trial court should have granted the defendants' motion for change of venue. Accordingly the trial court's order denying a change of venue is set aside and we direct that this action be transferred to Pinal County, one of the two alternative counties as to which the petitioners have requested that this case be transferred.

Reversed and remanded.

KRUCKER, C. J., and HATHAWAY, J., concur.