246 P.2d 178

## STATE v. HAROLD.
### No. 1032.

Supreme Court of Arizona.
July 16, 1952.

Fred O. Wilson, Atty. Gen., Earl Anderson, Asst. Atty. Gen., Joseph A. Crowe, Asst. Atty. Gen., Warren McCarthy, Maricopa Co. Atty., Fred Bockmon, Asst. County Atty., for the State.

George M. Sterling, of Phoenix, for defendant.

Whitney, Ironside & Whitney, of Phoenix, amici curiæ.

PHELPS, Justice.

The above-entitled cause was certified to this court under the provisions of section 44–2401, A.C.A.1939, to have determined the constitutionality of chapter 66, A.C.A. 1939 as amended, and in particular sections 66–156 and 66–157 thereof.

The first count of the information charged defendant with the operation of a motor vehicle on or about October 22, 1951, while under the influence of intoxicating liquor and with having been theretofore, on July 8, 1950, convicted of a similar offense. The second count charged defendant with having, on the same date, wilfully, unlawfully and recklessly operated a motor vehicle in wilful and wanton disregard for the safety for persons or property and also a prior conviction.

It is claimed by defendant that the trial court was without jurisdiction in the matter (1) for the reason that the law under which the defendant is charged is unconstitutional, null and void upon the ground that chapter 3, House Bill No. 5 (chapter 66, A.C.A. 1939, as amended) violates the provisions of article 4, part 2, section 13 of the Arizona Constitution; (2) that the information fails to state a public offense upon the ground that the law under which the defendant is sought to be charged is unconstitutional, null and void for the reason that it violates sections 3, 4, 8, 10 and 15 of article 2 of the state constitution; (3) that the law under which defendant is sought to be charged is unconstitutional, null and void upon the ground that it is an unwarranted, arbitrary, capricious, unlawful, illegal and an unconstitutional exercise of the police powers of the state. A motion to quash was presented to the court upon the above grounds and it was at this stage of the proceedings that the cause was certified to this court for the determination of the pertinent issues involved.

We will dispose of the questions in the order in which they appear to us to logically fall.

First, does the title of the act conform with the requirements of article 4, part 2, section 13 of the state constitution? This section provides that:

"Every act shall embrace but one subject and matters properly connected therewith, which subject shall be ex-

pressed in the title; but if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be embraced in the title."

The title to the Act in question reads as follows:

"An Act.

"Regulating traffic on highways; defining certain crimes and fixing penalties in the use and operation of vehicles; providing for traffic signs and signals; defining the power of local authorities to enact or enforce ordinances, rules, or regulations in regard to matters embraced within the provisions of this act; providing for the enforcement of this act; making uniform the law relating to the subject matter of this act; and repealing article 1 of chapter 66, and all of sections 59–208, 66–203, 66–402, 66–403 and 66–405, Arizona Code Annotated, 1939, as amended."

It is not claimed and, of course, could not logically be claimed that the entire act is vitiated even if it be true that the act contains matters unrelated to the subject embraced in the title. The constitutional provision itself provides that only so much of the act shall be void as shall not be embraced in the title. This leads then to the question whether the provisions of sections 66–156 and 66–157 of the act upon which these charges are based, are properly connected with the subject embraced in this ti-

tle. If they are not they are unconstitutional and void.

Section 66–156 provides, insofar as here material, that:

"(a) It is unlawful and punishable as provided in paragraph (d) of this section for any person who is under the influence of intoxicating liquor to drive or be in actual physical control of any vehicle within this state."

And section 66–157 provides that:

"Any person who drives any vehicle in wilful or wanton disregard for the safety of persons or property is guilty of reckless driving."

The subject embraced in the title is "regulating traffic on highways". Counsel for defense asserts this to be the subject of the title. He also agrees that any matters contained in the act properly connected with the subject embraced in the title are constitutional. It is claimed by defendant, however, that the attempt by the legislature to regulate the driving or control of automobiles otherwise than upon the highways is not embraced within the title of the act or connected therewith and therefore contravenes the provisions of the constitution heretofore quoted. Notwithstanding counsel's statement that it is his contention that the subject of the act is *"The regulation of traffic on the highways"* (Emphasis supplied.) He subsequently argues that the title contains two subjects. We believe the latter position is an unwarranted construction of the title and we will consider it only

from the standpoint that the subject of the title is as first contended by counsel for the defense.

This court has held in a number of cases that the provisions of the constitution here involved must be given a liberal construction. Hancock v. State, 31 Ariz. 389, 254 P. 225; State ex rel. Conway v. Versluis, 58 Ariz. 368, 120 P.2d 410; In re Lewkowitz, 70 Ariz. 325, 220 P.2d 229. In the latter case this court held that the title to the State Bar Act reading:

"An Act

"Relating to the state bar, and creating a public corporation to be known as 'The State Bar of Arizona.'" Laws 1933, c. 66.

was sufficiently broad to justify the inclusion in the act, provisions relating to the admission to practice law in the state and to the discipline and disbarment of those who may be guilty of the violation of the ethics of the profession or other offenses, and that it was proper for the legislature to set up necessary legal machinery for its enforcement.

The rule is well established, not only in this state, but in the majority of jurisdictions that the title to an act need not be a complete index to its contents. Taylor v. Frohmiller, 52 Ariz. 211, 79 P.2d 961, and that a provision in the act which directly or indirectly relates to the subject of the title and having a natural connection therewith is properly included in the body of the act. Ellery v. State, 42 Ariz. 79, 22 P.2d 838, or

if it is germane to the subject expressed in the title, it is constitutional. In re Lewkowitz, supra. It is also a cardinal rule of statutory construction that an act of the legislature will not be declared unconstitutional unless the court is convinced beyond a reasonable doubt that the act contravenes some provision of the constitution. Black & White Taxicab Co. v. Standard Oil Co., 25 Ariz. 381, 218 P. 139.

The advent of millions of automobiles upon the highways of the state and nation in recent years and the rapidly increasing death toll that is being taken as a result of their operations thereon has made it mandatory that regulatory measures be taken to remove insofar as possible the causes contributing to this useless waste of human life and property. It appears to us to be even more important for the legislature to prevent operators of cars who are under the influence of intoxicating liquors or who are at the time driving recklessly and in wilful and wanton disregard for the safety of persons or property, from entering upon the highways and into the stream of traffic than to permit them to enter thereon and after a tragic accident has happened to punish them for maiming or causing the death of those who are lawfully in the use of such highways. It is frequently the entry upon the highway by reckless or intoxicated drivers that causes the death and destruction this law seeks to prevent. Even upon private property an intoxicated or reckless driver of an automobile is just as much a menace to himself or to anyone who may be lawfully thereon as he would be to those on a public highway. The only difference is in the degree.

We are not entirely clear as to what point counsel seeks to raise on the question of penalties provided for in the act. If in his reference to the imposition of such penalties provided for therein he contends that the title of the act gives no notice that such provision would be incorporated therein and that the act is therefore unconstitutional, the answer is first, that such inclusion is not necessary, Dennis v. Jordan, 71 Ariz. 430, 229 P.2d 692; and second, that the title expressly provides for such penalties. If he intends to say merely that the act in providing penalties fails to make exceptions in the case of juvenile offenders, the position is untenable and unworthy of consideration. The disposition of juvenile offenders is provided for under the law relating to juveniles.

Defendant next argues that in attempting to regulate the operation of automobiles at places other than on a public highway the legislature is exercising a power it does not possess. We held in Weston v. State, 49 Ariz. 183, 65 P.2d 652, that the drunk driving statute in existence at that time was a police regulation. Its effect was to regulate drunk driving upon public highways. The police power of a state is an attribute of sovereignty and inherent in every state independent of statute. It is founded upon the duty of the state to protect the lives,

216

health, safety, morals and general welfare of society. We believe it to be the universal rule of the courts that so long as the legislature enacts laws reasonably necessary for the preservation of the public health, safety, morals or general welfare of the public it is acting within the police power of the state. What we said above with respect to the purpose, right and duty of the legislature to prevent incompetent drivers of motor vehicles, arising from any cause whatsoever, from operating automobiles upon public highways or elsewhere is equally applicable in determining whether the legislature was in the legitimate exercise of its police powers in incorporating sections 66–156 and 66–157, A.C.A.1939, supra, in the act. We hold that it was. It cannot be said that this legislation was not reasonably necessary for the safety and welfare of the public or that it cannot reasonably be expected to reduce death and property loss upon the highway. The power to enact such laws has been upheld in many jurisdictions. People v. Rue, 166 Misc. 845, 2 N.Y.S.2d 939, in passing upon a law practically identical in substance with our statute, quoted with approval the following language from State v. Dowling, 204 Iowa 977, 216 N.W. 271, decided in 1927:

" 'I. Section 5027 of the Code of 1924 provides:

" 'Whoever while in an intoxicated condition operates a motor vehicle shall upon conviction be sentenced to the penitentiary for a period not exceeding one year, or be punished by a fine of not more than one thousand dollars or by both such fine and imprisonment.'

"Nowhere in said legislation is there any indication that the offense contains the prerequisite of commission upon a public road or street, nor does the fact that it is found in the chapter relating to motor vehicles and the 'law of the road' signify that, because of said title, construction requires the implication that the definition is not complete without including, by inference, such unexpressed condition. See State v. Pike, 312 Mo. 27, 278 S.W. 725.

"Important is the fact that throughout the chapter the legislators have limited the scope of the act to the public thoroughfares, if they so intended, and when the thought was otherwise, the omission expresses it. Automobiles have been declared dangerous instrumentalities, and it can be readily understood why their operation by intoxicated persons would not be allowed anywhere, for the very good reason that the influence of liquor upon the human mind is such that the addict might not remain off the public way, but because of said very loss of self-control, wander or recklessly drive the machine in front of or over others legitimately using the 'road,' oftentimes causing injury, destruction, or death. * * *" [166 Misc. 845, 2 N.Y.S.2d 942].

In State v. Carroll, 225 Minn. 384, 31 N. W.2d 44, 45, the court in upholding a similar law stated that:

"* * * The constitutionality and validity of such legislation in this state has been approved by this court, which has also recognized the menace and hazard to society caused by a person driving an automobile while intoxicated. (Citing cases.) A motor vehicle can be a dangerous instrumentality when operated by an intoxicated person or one under the influence of intoxicating liquor or narcotic drugs. * * * It would be absurd to say that a person driving or operating a motor vehicle while intoxicated or under the influence of intoxicating liquor or narcotic drugs was not guilty of a violation of the statute under consideration merely because at the moment such person was stopped or apprehended he happened to be either on or near a private roadway instead of on a public street or highway, because no one can say when such a person, while in a confused or befuddled state of mind as a result of his or her condition, will leave the private road and pursue a mad, zigzagging course down a public highway or street, with the resulting damage and horrors so frequently reported."

To the same effect is State v. Cormier, 141 Me. 307, 43 A.2d 819 and many others. The question of the right to enact such a law under the police powers of the state was not questioned in any of the cases examined.

██ Defendant asserts that the act is void because it violates sections 3, 4, 8, 10 and 15 of article 2 of the Arizona Constitution but abandoned this position in his brief except as to sections 10 and 15 thereof. Section 10 thereof provides that:

"No person shall be compelled in any criminal case to give evidence against himself, or be twice put in jeopardy for the same offense."

It is claimed that the act by providing that a certain percentage content of alcohol in the blood as shown by a chemical analysis of the blood, urine, breath or other bodily substance raises certain presumptions as to his sobriety or insobriety and somehow requires the defendant to give evidence against himself. There is nothing in the act to justify such a conclusion. Nowhere in the act is defendant required to submit to tests of any kind. Whether he could be required to do so, we do not here determine. The legislature was entirely within its powers to set up such standards based upon scientific facts which experiments had demonstrated fixes the point in the alcoholic content of the blood where sobriety ordinarily ends and insobriety begins.

██ Defendant then urges that the act violates section 15, article 2 in that it provides greater penalties on second and subsequent convictions without any time limit as

to the commission of said offenses. Section 15, article 2 provides that:

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted."

The power of the legislature in the exercise of its legislative function is measured by the power of absolute sovereignty except as limited by the state constitution and the constitution and laws of the Federal Government. Earhart v. Frohmiller, 65 Ariz. 221, 178 P.2d 436. Section 15, article 2, supra, limits its powers to impose punishment for the violation of any crime to the extent that it shall not be cruel and unusual. Certainly there is nothing cruel or unusual in fixing a fine of not less than $100 nor more than $300 or by imprisonment in jail for not less than ten days nor more than six months for a first offense for the violation of a law prohibiting the operation of so dangerous an instrumentality as an automobile which as has been said under the control of an intoxicated driver "often becomes a death weapon" and there is nothing cruel and unusual in imposing punishment of not less than 90 days nor more than a year or by a fine of not more than $1000 for a second offense. It will be observed from the quotation from the Iowa decision that the legislature in that state imposed a year's imprisonment or a fine of $1000 or both for the first offense of operating a motor vehicle while under the influence of intoxicating liquor. The same thing may be said concerning the section relating to reckless driv-

ing. The imposition of a greater punishment for a second conviction of the same kind of an offense does not violate any constitutional provision. This character of legislation has been upheld in many courts. People v. Biggs, 9 Cal.2d 508, 71 P.2d 214, 116 A.L.R. 205; Williams v. State, 56 Okl. Cr. 245, 37 P.2d 658. It has been the practice of the courts of this state from statehood based upon sound principles that the trial judge in imposing a sentence for the violation of any criminal offense may and does take into consideration whether the defendant has been previously convicted of the same or similar offense. This is the very purpose of the indeterminate sentence.

■ Counsel for defense has argued in his brief many phases of the law which are in nowise involved in the record certified to us and therefore will not be considered by the court. The amici curiae brief is devoted exclusively to sections 39, 53 and 55 of the act being sections 66-153(1), 66-155 and 66-157 respectively, A.C.A.1939, as amended. Only one of these sections is involved in the pertinent questions certified to us. That section is 66-157, supra, and has been fully discussed insofar as the questions raised by defendant are concerned. We think the claim set forth in the amici curiae brief which states that the statute is vague and ambiguous, and couched in "slippery" language is without merit. If the contention presented here is carried to its logical conclusion there are no words known to the English tongue that could be used in de-

nouncing a crime that would not require the definition thereof to accompany its use. Our own statute defines wilfully, the adverb, from which may be gleaned with reasonable certainty the meaning of the adjective wilful. This court in the case of Butane Corporation v. Kirby, 66 Ariz. 272, 187 P.2d 325, defined the term "wanton negligence" and numerous courts have defined the word "wanton" as it applies to negligence or reckless indifference. Interpreted in the light of their context no two words have been more frequently defined by the courts from the early common law to the present day. The word "disregard" possesses no hidden meaning. Webster defines it as "Not to regard; to pay no heed to; to fail to notice or observe; hence to slight as unworthy of regard or notice; as to disregard the admonitions of conscience."

Summarizing, the answers to the questions certified to us are:

1. That there is but one subject contained in the title of the act which is the regulation of traffic upon highways; that section 66–156 and 66–157 thereof are germane to, and directly connected with the subject of the title and that their inclusion does not violate the provision of article 4, part 2, section 13 of the Arizona Constitution.

2. That the legislature had the authority under the police power of the state to regulate the operation and control of automobiles wherever they may be within the borders of the state, and that the enactment of sections 66–156 and 66–157, supra, was a valid exercise of the police power of the state.

3. That the act contravenes neither the provisions of section 10 or section 15 of article 2 of the state constitution, nor any of the other sections to which reference was made.

UDALL, C. J., and STANFORD, DE CONCINI, and LA PRADE, JJ., concurring.