575 P.2d 822

**STATE of Arizona, Appellee,**

**v.**

**James Bryant SANDERS, Appellant.**

**No. 1 CA–CR 2571.**

Court of Appeals of Arizona,
Division 1,
Department B.

Jan. 10, 1978.
Rehearing Denied Feb. 16, 1978.
Review Denied March 7, 1978.

Ross P. Lee, Maricopa County Public Defender by Joel M. Glynn, Deputy Public Defender, Phoenix, for appellant.

## OPINION

JACOBSON, Judge.

The appellant, James Bryant Sanders, was convicted following a trial by jury of aggravated battery, as defined in A.R.S. § 13–245(A)(7). The criminal act was committed when he kicked Officer Cooper of the Phoenix Police Department in the face while the officer was in the process of arresting appellant's wife for trespass following an acrimonious confrontation in the office of a lawyer who had garnisheed her wages. The offense was designated as a misdemeanor at sentencing and appellant was placed on probation for one year. On appeal, appellant raises three questions:

1. Did the trial court err in allowing the state to present rebuttal testimony that the debt which was the subject of the garnishment was in fact an outstanding unpaid obligation?

2. Did the trial court err in refusing to allow the defendant to cross-examine Officer Cooper in regard to the post-arrest procedure outlined in A.R.S. § 13–1422?

3. Was the evidence sufficient to support the conviction?

## FACTS

The undisputed facts or facts tending to support the conviction show that Attorney Dennis Skarecky obtained a judgment against appellant and his wife based upon an indebtedness incurred by them to St. Joseph's Hospital. Skarecky subsequently caused a writ of garnishment to issue directed to Mrs. Sanders' employer. When this became known to Mrs. Sanders, she called Skarecky and asked him to release her check. Skarecky indicated that he could not comply. After stating her intention to do so, Mrs. Sanders brought her entire family, including appellant and their children, to Skarecky's office.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer III, Chief Counsel Crim. Div., Thomas G. Bakker, Asst. Attys. Gen., Phoenix, for appellee.

Without invitation, Mrs. Sanders and her children entered Skarecky's work office. Mrs. Sanders again demanded that Skarecky release her check. She showed him a form from St. Joseph's Hospital indicating that after "estimated insurance coverage" there would be a zero balance owing. Skarecky had contacted his client and had been advised that the judgment reflected a balance actually owing and that the garnishment should not be released. He advised Mrs. Sanders of that fact and requested that the family leave. When it was apparent that the family would not leave, Skarecky had his secretary call for the police.

The stalemate continued after the police arrived. The two officers (Cooper and McCullough) testified that they attempted to hear the opposing stories, but that Mrs. Sanders was becoming increasingly loud and abusive. The officers directed Skarecky to ask Mrs. Sanders to leave once again and he did so. Mrs. Sanders refused to leave, stating that she would go to jail.

When it became clear that Mrs. Sanders would not leave, the officers and Skarecky discussed arresting Mrs. Sanders for trespass. Skarecky was instructed by the officers to make a citizen's arrest by placing his hand on Mrs. Sanders' shoulder and advising her that she was under arrest. When Skarecky attempted to do this, Mrs. Sanders struggled and avoided him. Officer Cooper than attempted to stop her and place her under arrest. In the course of this, Mrs. Sanders bit the officer's thumb. A dose of "mace" proved ineffective to dislodge the thumb. When Mrs. Sanders did release Officer Cooper's thumb, she immediately fled from the office and ran down the building stairs. She was assisted in her escape by appellant, who was thereupon placed under arrest, without protest, for obstructing justice.

Officer McCullough caught up with Mrs. Sanders outside the building lobby. When she continued to refuse to submit to arrest, he wrestled her to the ground. He was so engaged in effectuating an arrest when appellant, who had come downstairs with Officer Cooper, kicked him in the face. The officer suffered a significant injury as a result of the kick.

## REBUTTAL TESTIMONY

■ Appellant contends that it was error for the court to permit the state to call as rebuttal witnesses St. Joseph's Hospital personnel who gave evidence to the effect that the debt incurred by the Sanders had never been paid. Appellant's specific contention in this regard is that the action of the trial court permitted impeachment of the Sanders on a collateral matter in violation of Arizona law as stated in authorities such as *State v. Mangrum*, 98 Ariz. 279, 403 P.2d 925 (1965) and *State v. Johnson*, 27 Ariz. App. 96, 551 P.2d 86 (1976).

The trial judge placed his reasons for allowing the rebuttal witnesses to testify on the record. He stated in chambers:

"For the record, I want the record to reflect the reason the Court permitted the rebuttal evidence to be received. During the course of cross examination of Mr. Skarecky, counsel for the defendant introduced a bill which was identified by both Skarecky's secretary and by Skarecky as evidence that the account had been paid and there was some question in the air whether or not the bill had been paid or not. It was the Court's feeling that the actions of Mr. Skarecky and all of the surrounding circumstances at least had some relation to whether or not the bill had been paid because if in fact the bill had been paid, it would have appeared that the actions of the attorney were, to say the least, outrageous and, furthermore, the justification for the victim or the defendant and the defendant's wife being there would have significantly changed.

"The Court felt that since that issue had been raised by counsel for the defendant and in fact the exhibit was received in evidence on his motion indicating that the bill had been paid, the Court felt that fairness required that even though it was a collateral matter that the door had been opened and the State should have an opportunity to respond to

the inferences which that exhibit raised in the minds of the jury. That is why the continuing objection and the objection to the last two or three witnesses was overruled."

The difficulty with appellant's position is that he did not treat the issue of whether or not the debt had been paid as collateral in the trial court. Both upon cross-examination of the state's witnesses and in direct examination of his own witnesses, defense counsel sought to establish either the nonexistence of the debt or the reasonableness of a belief by the Sanders that the debt had been paid. To hold that the rule against impeachment upon collateral matters bars the introduction of any further evidence on the subject would transform the rule in a case like the present one into a sword rather than its more proper function as a shield. Having injected the matter into the case, appellant cannot claim its exploration as collateral.

Appellant points to the fact that at an early stage of the trial, the trial court sustained an objection to defense counsel's inquiry into the garnishment on the basis of its collaterality. The specific question before the court at that time, however, was the accuracy of the affidavit submitted to obtain issuance of a writ of garnishment. Appellant was at that time attempting to show that the garnishment itself was illegal. The jury trial of appellant for the crime of aggravated battery was not the place to litigate the legalities of the writ of garnishment; the issue was clearly collateral. As the trial court indicated, however, whether or not the debt had been paid had some bearing on the justification of Mrs. Sanders for being in Mr. Skarecky's office prior to her attempted arrest there and subsequent arrest for trespass. The earlier

ruling of the court was also made prior to the time that defendant injected the issue into the case. We see no prejudice to appellant in the ruling of the court.

## SECTION 13–1422

During the cross-examination of Officer Cooper, defense counsel attempted to elicit from him the reason or reasons why the officer did not use the methods set forth in subsections (A), (C) and or (D) of A.R.S. § 13–1422 to effect the arrest of Mrs. Sanders.[1] In arguing that he should have been permitted to so cross-examine the officer, appellant cites the following passage from *State v. Cadena*, 9 Ariz.App. 369, 452 P.2d 534 (1969).

"Under the general common law rule, excessive force used by an officer effecting an arrest may be countered lawfully. *People v. Curtis*, 70 Cal.2d 347, 74 Cal. Rptr. 713, 450 P.2d 33 (1969). In Arizona a person illegally arrested can resist arrest as long as he uses such force as is reasonably necessary, short of homicide. *Dugan v. State*, 54 Ariz. 247, 94 P.2d 873 (1939). *It is considered unreasonable to inflict bodily harm to effect an arrest for a misdemeanor or if there are other reasonable methods of effecting the arrest.*" A.R.S. § 13–1401; *Harding v. State*, 26 Ariz. 334, 225 P. 482 (1924). *Id.* at 372, 452 P.2d at 537. (emphasis added)

The insuperable barrier in our view to appellant's position is that § 13–1422 provides for what may be done *after* an arrest has been made. An arrest is not complete until the individual's liberty of movement is interrupted and restricted by those making the arrest. *State v. Green*, 111 Ariz. 444, 532 P.2d 506 (1975). Here, there is no evidence indicating that Mrs.

1. A.R.S. § 13–1422 provides in part:

"A. In any case in which a person is arrested for an offense that is a misdemeanor, the arresting officer may release the arrested person from custody in lieu of taking such person to the police station by use of the procedure prescribed in this section.

\* \* \* \* \* \*

"C. In any case in which a person is arrested for an offense that is a misdemeanor, the ar-

resting officer may prepare in quadruplicate a written notice to appear and complaint, containing the name and address of such person, the offense charged, and the time and place where and when such person shall appear in court . . . .

"D. The Arizona traffic ticket and complaint may be utilized not only for the purposes provided in the Arizona supreme court rule, but to satisfy the requirements of this section."

Sanders was ever arrested prior to the physical restraint which culminated in the subject battery. Therefore, what conceivably might have been an appropriate post-arrest alternative never became relevant.

## SUFFICIENCY OF THE EVIDENCE

■ Appellant makes two arguments under this heading. His first argument is that the attempted arrest of Mrs. Sanders was illegal because the criminal trespass statute A.R.S. § 13–712 was "apparently constitutionally infirm" by virtue of a United States District Court holding that is not otherwise specified in appellant's briefs. The constitutionality of former A.R.S. § 13–712(9) was upheld in *State ex rel. Purcell v. Superior Court*, 111 Ariz. 582, 535 P.2d 1299 (1975). Present § 13–712(11) was in effect on the date of the subject offense and nothing which appellant has presented in this Court has altered our view as to its presumed validity. We accordingly reject this contention.

■ However, even if we assume that appellant has a right to resist the arrest of his wife and further assume that the wife's arrest was illegal, in view of the Arizona Supreme Court decision in *State v. Hatton*, 116 Ariz. 142, 568 P.2d 1040 (1977) we are of the opinion that the traditional common law rule that a person illegally arrested can resist arrest as long as he used such force as is reasonably necessary, short of homicide, is no longer the law in Arizona.

In the event we misread the Supreme Court's leanings in this regard, we will deal with appellant's second contention, that is, that the record conclusively establishes that Officer Cooper used excessive force in making the arrest and that therefore appellant's act in kicking the officer in the face to protect or defend his wife was justified.

■ The jury was instructed that no unnecessary or unreasonable force shall be used in making an arrest and that excessive force used by a officer may be countered lawfully. It is not our function as a reviewing court to weigh the evidence; rather we must view the evidence in the light most favorable to sustaining the conviction and resolve all reasonable inferences in favor of the state. *State v. Gaines*, 113 Ariz. 206, 549 P.2d 574 (1976). Only in circumstances where there is a complete absence of probative facts to support a judgment or where a judgment is clearly contrary to any substantial evidence may we reverse on the grounds of insufficient evidence. *State v. Gaines, supra*, and authorities cited therein.

■ Upon a review of the record in the present case, it very clearly appears that there was ample evidence from which the jury could have concluded that Officer Cooper used no more force than was necessary to effect an arrest of Mrs. Sanders, who from much of the testimony appears to have been actively and forceably resistful. The evidence sufficiently supports the verdict.

The judgment and sentence of the trial court is affirmed.

WREN, P. J., and EUBANK, J., concurring.