(610 P.2d 111)
No. 50,657

STATE OF KANSAS, *Appellant,* v. GREGORY A. WILLIAMS, *Appellee.*

Opinion filed April 25, 1980.

*Harry E. Warren,* assistant district attorney, *Robert T. Stephan,* attorney general, and *Michael J. Malone,* district attorney, for the appellant.

No appearance by appellee.

Before PARKS, P.J., SWINEHART and MEYER, JJ.

SWINEHART, J.: This is an interlocutory appeal by the State, pursuant to K.S.A. 1979 Supp. 22-3603, from the district court's order suppressing the results of a blood test.

During the early morning hours of July 15, 1978, Trooper Fred Waller of the Kansas Highway Patrol responded to a report of an injury accident occurring approximately ten miles south of

Lawrence. Upon arriving at the scene of the accident, Waller observed two vehicles which were extensively damaged. The occupants of one of the vehicles, two young women, were deceased. Three persons were found in the other vehicle, including the defendant who appeared to be the driver. Waller and other law enforcement officers helped ambulance personnel extract defendant and the other occupants from the car. Trooper Waller noted that the vehicle smelled of alcohol and saw beer bottles on the floor of the car. From an examination of the scene, Waller concluded the accident had been a head-on collision and that defendant's car had crossed the center line before colliding with the other vehicle. This conclusion was bolstered by statements made to Waller by a truck driver that the car driven by defendant had followed his truck in the northbound lane for several miles before the accident, and that defendant had swerved into the southbound lane several times during that distance in an apparent attempt to pass. There were no skid marks from either car. From the above circumstances, Waller believed probable cause existed that defendant had been driving while intoxicated (K.S.A. 1979 Supp. 8-1567), and felt a blood test was warranted.

Waller was informed by his supervisor, Sergeant Gerald Cares, that he should place defendant under arrest and charge him with violation of K.S.A. 1979 Supp. 8-1567 prior to requesting a blood sample. Waller did not verbally inform the defendant he was under arrest, but requested Deputy Sheriff Armbrister to accompany defendant to the hospital and try to obtain his consent to a blood sample. Armbrister assumed defendant was under arrest.

Defendant was extensively injured as a result of the accident, and complained abusively of his injuries at the hospital. Deputy Armbrister testified he asked defendant if he would verbally agree to having a blood sample taken and defendant consented. Trooper Waller also testified that defendant agreed to the sample. When the nurse began to extract the blood from defendant's ankle, he began to struggle and both Waller and Armbrister had to hold him down in order to complete the process. Defendant testified he remembered nothing of the blood test or his alleged consent.

Neither hospital personnel nor defendant were informed that defendant was under arrest, although defendant testified that his doctor informed him that the sheriff's permission was required

prior to his release. Defendant was not released to police custody and charges were not filed until September 21, 1978. Defendant was charged with two counts of vehicular homicide, K.S.A. 21-3405, driving while intoxicated, K.S.A. 1979 Supp. 8-1567, and driving left of center, K.S.A. 8-1514. Defendant filed a motion to suppress the results of the blood test, which was sustained by the trial court at the conclusion of the hearing. The State has appealed, contending that: (1) There was probable cause to arrest defendant; (2) defendant was properly placed under arrest; and (3) defendant voluntarily consented to the blood sample.

1. Probable cause for an arrest without a warrant exists when the facts and circumstances known to the arresting officer are sufficient to warrant a man of reasonable caution to believe a crime has been or is being committed. *State v. Coe,* 223 Kan. 153, Syl. ¶ 4, 574 P.2d 929 (1977). It is only necessary that the evidence lead the officer to believe that guilt is more than a possibility, and it is well established that the belief may be predicated in part upon hearsay information. *State v. Stewart,* 225 Kan. 410, 412, 591 P.2d 166 (1979).

K.S.A. 22-2401 provides in relevant part:

"A law enforcement officer may arrest a person when:

. . . .

"(c) He has probable cause to believe that the person is committing or has committed

. . . .

"(2) A misdemeanor, and the law enforcement officer has probable cause to believe that:
"(i) Such person will not be apprehended or evidence of the crime will be irretrievably lost unless such person is immediately arrested   . . . ."

A review of the present case indicates Trooper Waller had sufficient probable cause to arrest the defendant for violation of K.S.A. 1979 Supp. 8-1567, considering the smell of alcohol coming from defendant's car, the presence of beer bottles therein, the information received from the truck driver at the scene of the accident, the apparent circumstances of the collision, and the necessity of obtaining a blood sample within a relatively short period of time. The trial court properly found that probable cause existed for defendant's arrest.

2. The issue of whether defendant was under arrest is crucial in determining whether the "implied consent" statute, K.S.A. 1979 Supp. 8-1001, applies. Those provisions become operative only

after a person is arrested or otherwise taken into custody.[1] *State v. Mezins,* 4 Kan. App. 2d 292, 294, 605 P.2d 159, *rev. denied* March 14, 1980. Before arrest, K.S.A. 1979 Supp. 8-1001 has no application and a person may voluntarily agree to a blood test but is free to refuse. *State v. Gordon,* 219 Kan. 643, 647, 549 P.2d 886 (1976).[2]

In the present case, the trial court found there was no arrest of defendant.

K.S.A. 1979 Supp. 22-2202 provides in relevant part:

"(3) 'Arrest' means the taking of a person into custody in order that such person may be forthcoming to answer for the commission of a crime. The giving of a notice to appear is not an arrest."

No Kansas case appears to have directly confronted the issue of what constitutes an arrest. The following is found in 6A C.J.S., Arrest § 43, pp. 99-103:

"In order to constitute an act of arrest, there must be an intention or a purpose to take a person into the custody of the law, under a real or pretended authority, and an actual or constructive seizure or detention of such person, which is so understood by the person arrested. Accordingly, there must be an intention to effect an arrest and such intention must be evidenced by some unequivocal act, or by using words indicative of arrest. It is not necessary that formal or particular words be used, or that there be a booking at a police station, for the fact of arrest may be shown by surrounding facts and circumstances. However, the words used or not used at the time of arrest are relevant to the question of whether there was in fact any arrest.

"A person's subjective belief or feelings are not controlling on the question as to whether he was under arrest at a particular time, although it is a factor to be

1. No case found has had occasion to define the phrase "or otherwise taken into custody" found in K.S.A. 1979 Supp. 8-1001. It is to be noted that the definitions section for the Kansas Code of Criminal Procedure defines "[c]ustody" as "the restraint of a person pursuant to an arrest or the order of a court or magistrate" (K.S.A. 1979 Supp. 22-2202[7]), and that definition is accepted for terms of this case. See also discussion in *State v. Brunner,* 211 Kan. 596, 599-601, 507 P.2d 233 (1973), as to what constitutes "in custody" for purposes of determining whether custodial interrogation occurred. In the present case, there is no indication that defendant was restrained by order of court or magistrate. Therefore, this opinion focuses solely on the issue of whether defendant was under arrest.

2. Although neither party has raised any constitutional argument, it may be noted that the constitution also requires a lawful arrest, absent a valid search warrant or voluntary consent, to justify the taking of a blood sample as an incident thereto. *State v. Garner,* 227 Kan. 566, 608 P.2d 1321 (1980).

considered, and the test is what a reasonable man, innocent of any crime, would have thought had he been in the same position.

. . . .

"It is generally held that the custody or control, the assumption of which is involved in an arrest, imports an actual restraint or detention of the person arrested, or a significant restraint of his freedom of movement by effectively preventing him from exercising his freedom to depart, or compelling him to move in accordance with the arrestor's instructions. There is no arrest in the absence of the requisite restraint of liberty. On the other hand, however, it has been held that the detention or custody may be merely constructive, not actual.

"The mere utterance of words indicative of an arrest is not sufficient to constitute an arrest, and while the announcement of an arrest may indicate that an arrest has been made, in determining when an arrest was made, the time of the announcement is not controlling. A reading or verbal proffer of a warrant, without more, is not sufficient to constitute an arrest, and the same is true where there is a mere personal service of process alone.

"An arrest is consummated only when there has been a taking of possession of a person by manual caption or otherwise, but the requisite control may be assumed without force, or without any visible physical restraint, and in any manner by which the subject of the arrest is brought within the power or control of the person making it. Thus, an act which indicates an intention to take a person into custody and subjects such person to the actual control and will of the actor constitutes an arrest. A manual touching is not necessary where the subject of the arrest submits thereto or is otherwise actually subjected to restraint. Where, however, the person resists arrest, some manual touching of the body has been held necessary to consummate the arrest. Actual physical restraint of the subject by laying hands on him is ordinarily an arrest, as where a person is handcuffed, but in the absence of an actual laying on of hands, the restraint must be manifested in some unequivocal form."

See generally *State v. Green,* 111 Ariz. 444, 446, 532 P.2d 506 (1975); *People v. Ussery,* 24 Ill. App. 3d 864, 867, 321 N.E.2d 718 (1974); *Reed v. State,* 199 So. 2d 803 (Miss. 1967), *cert. denied* 390 U.S. 413 (1968).

The Indiana Supreme Court has held, in determining the legality of a search and seizure of an automobile, that an arrest was not consummated at the time when the defendant was in the hospital and told he was under arrest by an officer, who subsequently went into another room and made out a traffic citation which was not presented to defendant until a later time. *Machlan v. State,* 248 Ind. 218, 225, 225 N.E.2d 762 (1967).

In *Bouldin v. State,* 26 Md. App. 545, 553, 338 A.2d 404 (1975), the court held an arrest of an unconscious defendant in a hospital was effectuated where there were sufficient grounds for an arrest coupled with the arresting officer's intent to detain the suspect,

but added that "if conditions warrant the prerequisite verbal or physical communications, the intent to arrest should be communicated to the arrestee." See also *State v. Gordon,* 219 Kan. at 647.

In the present case, defendant's condition was described as semiconscious by Deputy Armbrister. The record is unequivocal that defendant was never verbally informed he was under arrest; that he was never given his *Miranda* warnings; and that he was never issued a traffic citation while at the hospital. Although defendant was informed by his doctor that the sheriff's permission was required prior to his release, the record clearly indicates that the hospital personnel were not informed of defendant's alleged arrest at the time the blood sample was taken and that defendant was not ultimately released to police custody. While no one of the above factors is controlling, it is clear that the trial court properly determined that defendant was not placed under arrest.

3. The trial court additionally found that defendant did not voluntarily consent to the blood test.

Broadly stated, the issue regarding the voluntariness of defendant's alleged consent to the blood test is whether there is involved an impermissible search of the seized person. See *State v. Garner,* 3 Kan. App. 2d 697, 699, 600 P.2d 1166 (1979), *aff'd* 227 Kan. 566, 608 P.2d 1321 (1980). Absent a voluntary consent to a blood test, there is no valid waiver of an accused's Fourth Amendment rights. *State v. Brunner,* 211 Kan. 596, 604, 507 P.2d 233 (1973). Where the State attempts to justify a search by the consent of the defendant it has the burden of proving that the consent was freely and voluntarily given. *State v. Stitzel,* 2 Kan. App. 2d 86, Syl. ¶ 3, 575 P.2d 571 (1978). Finally, the existence and voluntariness of consent is a question of fact to be decided in light of attendant circumstances by the trier of facts (*State v. Chiles,* 226 Kan. 140, 145, 595 P.2d 1130 [1979]), and the trial court's determination of admissibility will be upheld on appeal if supported by substantial competent evidence. *State v. Brunner,* 211 Kan. at 601.

A prolonged discussion is unwarranted. As the trial court noted, the facts of the instant case bear a striking similarity to those in *State v. Gordon,* 219 Kan. at 648. Taking the evidence as a whole, especially considering the various officers' descriptions of defendant's apparent physical and mental condition and de-

fendant's own testimony that he remembered nothing of the blood test, the trial court's determination regarding voluntariness is amply supported by substantial competent evidence.

Judgment is affirmed.