672 P.2d 968

STATE of Arizona, Appellant,

v.

Brad Jess WAICELUNAS, Appellee.

No. 1 CA–CR 6283.

Court of Appeals of Arizona,
Division 1, Department B.

Aug. 2, 1983.

Rehearing Denied Oct. 20, 1983.

Review Denied Nov. 22, 1983.

Thomas E. Collins, Maricopa County Atty. by Lyn D. Kane, Deputy County Atty., Phoenix, for appellant.

Walter J. Reynolds, Jr., and Richard T. Fuller, Mesa, for appellee.

## OPINION

GRANT, Judge.

In this appeal the state raises the question of whether the trial court properly suppressed a blood alcohol test. On January 12, 1982, defendant Brad Waicelunas, was involved in a two-vehicle collision which was fatal to the other driver. Waicelunas was indicted on a charge of manslaughter, a class 3 dangerous felony. Phoenix Police Officers Paul Kent and Donald Dierks investigated the accident.

Officer Dierks, intending to administer a breathalyzer test, went to the hospital where the defendant was being treated. While setting up the test machinery, defendant indicated to the officer that he would not take the test. Thereafter, Officer Kent requested a physician treating defendant to take a blood sample for police purposes only. After the blood sample had been taken and Officer Dierks finished setting up the breathalyzer test, defendant was given another opportunity to take the breath test. Officer Dierks read the implied consent law to defendant and defendant informed the officer that he would not give a breath sample. Officer Dierks prepared a form entitled "Officer's Report of Refusal to Take Breath Test" which documented the fact that defendant was informed of the implied consent law and thereafter refused to take a breathalyzer test. Both times defendant refused to take the breath test, he was lying on a table in the hospital's emergency room.

Prior to trial, defendant's counsel moved to suppress the test results of the blood sample. At the hearing, both officers emphatically testified that defendant was never placed under arrest. Officer Dierks testified that although he never placed defendant under arrest, the form he completed entitled "Officer's Report of Refusal to Take Breath Test" states that defendant was informed that he was under arrest. Defendant's counsel argued that defendant was placed under arrest and that the blood sample taken in violation of the implied consent statute must be suppressed. The state argued that defendant was never arrested; therefore, the implied consent statute was inapplicable to the case and pursuant to *Schmerber v. California,* 384 U.S.

757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) the extraction of blood did not offend the fourth amendment. The trial court granted defendant's motion stating:

IT IS THE ORDER OF THE COURT granting the motion to suppress specifically for the reason Statute A.R.S. § 28–691(D) applies to the fact situation in this case; that the Court finds specifically that the defendant refused twice to take a chemical test, that the blood was taken after his refusal and without his consent.

Thereafter, the court, upon the state's motion, dismissed the case without prejudice.

On appeal, the state argues that the trial court erred in suppressing the blood sample as the arrest requirement of the implied consent statute was not met. The state also argues that defendant violated the discovery rules of the Arizona Rules of Criminal Procedure by refusing to divulge the identity of impeachment witnesses. When one drives a motor vehicle in Arizona one is thereby implying consent to submit to breath, blood or urine tests if arrested for an offense involving a motor vehicle.[1] However one may withdraw consent by refusing the test. The state may then extract the penalty of license revocation for a period of twelve months for such refusal. A.R.S. § 28–691(D) (Supp.1983).[2]

We agree with the state that the arrest requirement of the statute was not met in this case. Both investigating officers testified that they did not place defendant under arrest.

The subjective intent of the officers is not controlling on the issue whether an arrest has occurred; rather, the issue rests upon an evaluation of all the surrounding circumstances to determine whether a reasonable man innocent of any crime would have thought he was being arrested if he had been in defendant's shoes. *United States v. Beck*, 598 F.2d 497 (9th Cir.1979); *Taylor v. Arizona*, 471 F.2d 848 (9th Cir. 1972) *cert. denied* 409 U.S. 1130, 93 S.Ct. 948, 35 L.Ed.2d 262 (1973).

Defendant argues that the fact that Officer Dierks completed a form entitled "Officer's Report of Refusal to Take Breath Test" is evidence that he was arrested. This is a form which an officer must complete when an arrested person refuses to submit to a breath test. The form is an affidavit indicating how an arrestee has refused to submit to a breath test, which is sent to the Motor Vehicle Division of the Department of Transportation for purposes of license suspension. The instructions in the form state that the arresting officer must read the following to the arrestee:

1. A.R.S. § 28–691, as amended, requires you to submit to a chemical breath test to determine the alcoholic content of your blood. If you refuse to submit to this test, your right to drive will be suspended for six months. I am, therefore, requesting you submit to a breath test.

---

1. A.R.S. § 28–691(A) provides in pertinent part as follows:

Any person who operates a motor vehicle within this state gives consent, subject to the provisions of § 28–692, to a test or tests of his blood, breath, or urine for the purpose of determining the alcoholic content of his blood if arrested for any offense arising out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor. The test or tests chosen by the law enforcement agency shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving or in the actual physical control of a motor vehicle within this state while under the influence of intoxicating liquor.

2. A.R.S. § 28–691(D) provides in pertinent part:

If a person under arrest refuses to submit to a test designated by the law enforcement agency as provided in subsection A of this section, none shall be given. The department, upon the receipt of a report, certified and subject to the penalty for perjury as prescribed by § 28–1062, that there are reasonable grounds to believe the arrested person had been driving or was in actual physical control of a motor vehicle within this state while under the influence of intoxicating liquor and that the person had refused to submit to the test, shall suspend for a period of twelve months his license or permit to drive, or any nonresident operating privilege.

2. Those rights of which you have just been advised, that is the right to remain silent or to speak with an attorney, have an attorney present during questioning, or to have one appointed for you, do not apply to this request.

3. If you remain silent, your silence will be considered a refusal to take the test. Likewise, you are advised that regardless of what an attorney may advise you regarding submission to this test, if you refuse to take the test, your right to drive will still be suspended for six months.

The form also indicates that the arrestee was informed that he was under arrest before a breath test was requested by the officer. Defendant argues that this form, which refers to actions necessary to be taken with respect to an "arrestee" or "arrested person" by an "arresting officer" indicates that an arrest took place. We disagree.

The testimony of the officers during the motion to suppress hearing indicates that the officers were under the impression that they were required to complete and file the report of refusal whenever they offered a breath test under any condition and it was refused. Officer Dierks explained that this is why he completed the form even though he had not placed defendant under arrest. Thus, the completing of the form does not indicate an intention on the part of Officer Dierks to arrest defendant. Furthermore, the reading of the aforementioned portion of the document to defendant would not lead defendant to believe he was under arrest at the time the blood sample was taken since this occurred after the blood was taken. Officer Dierks testified at the motion to suppress hearing that he had not arrested defendant even though he filled out the report.

Officer Kent testified that the Phoenix Police Department had a procedure for placing persons under arrest while they are in the hospital. If the injuries are very serious or if surgery is necessary, an officer is placed outside the surgical unit or the intensive care unit. If the person to be arrested is doing fairly well he can be physically booked into the County Detention Ward of the Maricopa County Hospital. Neither of these procedures was followed in this case.

In determining whether an arrest has occurred, a significant consideration is the extent that freedom of movement is curtailed and the degree and manner of force used. *United States v. Beck, supra. See State v. Stauffer,* 112 Ariz. 26, 536 P.2d 1044 (1975); *State v. Sanders,* 118 Ariz. 192, 575 P.2d 822 (App.1978). In this case, defendant's liberty was restricted by the personnel of the hospital where he was being prepared for surgery, not by the police officers who stated they would have left if requested to do so by defendant and that defendant was not under arrest.

In a factually similar case, *State v. Williams,* 4 Kan.App.2d 651, 610 P.2d 111 (1980) the Court of Appeals of Kansas determined that where the defendant was never verbally informed he was under arrest, where he was never given his *Miranda* warnings, where he was never issued a traffic citation while at the hospital, and where the hospital personnel were not informed of defendant's alleged arrest at the time the blood sample was taken, the defendant had not been placed under arrest.

From a review of the record, we find no reasonable evidence that the defendant was under arrest at the time the blood sample was taken. The provisions of the implied consent statute become operative only after a person is arrested. *State v. Huffman,* 137 Ariz. 300, 670 P.2d 405 (App.1983); *State v. Williams, supra.* Before an arrest, the implied consent statute has no application and a person may voluntarily agree to a blood test but is free to refuse. Thus, before an arrest, a person may refuse to take a breath test without being penalized by having his driver's license suspended for a year. The other side of the coin, which is presented in this case, is that before an arrest, a nonconsensual blood test does not violate the terms of the implied consent statute. This result is consistent with the intent of the statute

which is to remove drunk drivers from the state's highways, not to provide a shield for a drunk driver who has caused the death of one lawfully in use of such highways. *See State v. Harold,* 74 Ariz. 210, 246 P.2d 178 (1952); *Campbell v. Superior Court,* 106 Ariz. 542, 479 P.2d 685 (1971).

Having decided that the implied consent statute does not provide a basis for suppressing the blood sample taken from appellee, we next consider any constitutional violations which might have occurred. We believe this issue has been determined by the U.S. Supreme Court in *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). The Supreme Court in *Schmerber* held that a blood sample may be taken without a search warrant if it is taken in a medically approved manner and based upon probable cause to believe that the person is intoxicated. In such a situation, exigent circumstances permit a warrantless search as alcohol in a person's system dissipates over a relatively short period of time. The one difference between the facts of this case and those of *Schmerber* is that in *Schmerber,* an arrest had been effectuated prior to obtaining the blood sample, while in this case, as we have already determined, no arrest took place. There is a split of authority on the issue of whether an arrest is required in order to apply the *Schmerber* exception to the warrant requirement. See *Annot.* 14 A.L.R. 4th 690, § 3[a] and [b].

However, we are constrained to follow recent persuasive authority that a blood sample may not be taken from a suspect unless a formal arrest has occurred prior to the seizure. *United States v. Harvey,* 701 F.2d 800 (9th Cir.1983). This ninth circuit case is remarkably similar on the facts to the case before us. It consolidates two cases in which there were convictions for involuntary manslaughter resulting from alcohol-related highway accidents. The common issue was whether results of blood tests should have been suppressed when neither defendant was formally arrested at the time the blood samples were taken. Defendant Harvey was in the hospital following the accident. Without arresting Har-

vey, the officer requested her consent for a blood sample. Harvey refused and one was taken over her objection. The ninth circuit held that *Schmerber v. California* controls resolution of the issue and said: "To hold that a formal prior arrest is not necessary would be to extend *Schmerber's* applicability to different facts and conditions, a result the Court plainly did not intend." *Id.* at 804. The ninth circuit in Harvey went on to reason as follows:

> Requiring an actual arrest prior to the removal of a blood sample will not place an undue burden on police. If placing a suspect under arrest is but a "silly formality," as the United States argues in *Harvey,* there is no reason why the police cannot take the time to engage in this ritual prior to taking the sample. Placing the suspect under arrest will help ensure that the police do not arbitrarily violate an individual's privacy. Also, it will sharply delineate the moment at which the police officer determined he or she had probable cause to arrest. In this respect, it will prevent an after-the-fact justification of the seizure of the suspect and the blood. (citation omitted) Furthermore, the formal announcement of arrest triggers certain responsibilities for the arresting officer and gives rise to certain rights for the accused; for example, those rights delineated in a proper *Miranda* warning.

*Id.* at 805.

 We hold the blood sample taken under the facts of this case violated the fourth amendment. We will affirm the trial court when it reaches the right result for the wrong reason. *Certified Collectors, Inc. v. Lesnick,* 116 Ariz. 601, 570 P.2d 769 (1977); *Matter of Torstenson's Estate,* 125 Ariz. 373, 609 P.2d 1073 (App.1980). We therefore hold that the blood sample was properly suppressed.

 The state's second issue on appeal is whether the defendant violated the discovery rules of the Arizona Rules of Criminal Procedure by refusing to divulge the identity of impeachment witnesses. This is

not one of the grounds on which the state may appeal as specified in A.R.S. § 13–4032 and thus, we do not have jurisdiction over the matter. *State v. Lopez,* 26 Ariz.App. 559, 550 P.2d 113 (1976), *approved and adopted, State v. Fayle,* 114 Ariz. 219, 560 P.2d 403 (1976).

For the foregoing reasons, the order granting the motion to suppress is affirmed.

GREER, J., concurs.

FROEB, Presiding Judge, concurring specially:

I agree with the majority opinion holding that no arrest of the defendant took place; that A.R.S. § 28–691(D) (implied consent law) is therefore not involved; and that a blood sample obtained prior to arrest has recently been held to violate the fourth amendment to the United States Constitution in *United States v. Harvey,* 701 F.2d 800 (9th Cir.1983). This court therefore decides correctly that the blood sample must be suppressed as evidence.

Whether the decision is correct depends upon whether *United States v. Harvey* has correctly interpreted *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) to require an actual arrest prior to taking the blood sample in lieu of mere probable cause to arrest. While the opinion in *Harvey* rejects the latter, it is apparently the only United States Court of Appeals decision to reach the question. State courts are divided on the issue. *See* 2 LaFave, *Search and Seizure* § 5.4(b); Annot. 14 A.L.R. 4th 690; for a state court decision allowing in evidence a blood sample taken upon probable cause without arrest, *see State v. Aguirre,* 295 N.W.2d 79 (Minn. 1980).

There is another aspect of the case which prompts my separate comment under our decision. A person arrested for an offense committed while driving intoxicated can refuse a blood test, and if one is taken involuntarily it may not be introduced as evidence at trial. This is a result of A.R.S. § 28–691(D) (quoted in the majority opinion) which provides that a person so arrest-

ed may refuse such a test, and if he does so, none shall be given.

There is produced from this a law enforcement dilemma: if the suspect is arrested he may refuse the taking of a blood sample, and if one is taken it will be suppressed as evidence under the implied consent law. If the suspect is not first arrested, any blood sample taken will be suppressed as evidence as a fourth amendment violation under *Schmerber v. California.* The net effect in Arizona is to outlaw any involuntary taking of a blood sample except the limited instance where the suspect is "dead, unconscious or who is otherwise in a condition rendering him incapable of refusal." In the latter situation consent to withdrawal of the sample is deemed given. *See* A.R.S. § 28–691(C).