707 P.2d 951

**The STATE of Arizona, Appellee,**

v.

**Abel Cirilo SALAZAR, Appellant.**

**No. 2 CA–CR 3420.**

Court of Appeals of Arizona, Division 2, Department A.

April 24, 1985.

Review Denied May 31, 1985.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Gerald R. Grant, Phoenix, for appellee.

Frederic J. Dardis, Pima County Public Defender by Frank P. Leto, Tucson, for appellant.

## OPINION

BIRDSALL, Presiding Judge.

The appellant was convicted of manslaughter, two counts of endangerment and driving while intoxicated, all arising from a two-car collision at the intersection of Interstate–10 and Speedway Boulevard in Tucson. The first three crimes were found to be of a dangerous nature and the appellant received presumptive concurrent sentences.

We must decide whether reversible error occurred when the trial court: 1) refused to permit defense counsel to show that a witness, the manslaughter victim's wife, had brought a wrongful death action against the appellant; 2) permitted the state to call the appellant's wife as a witness against him; 3) allowed the state to introduce a prior statement of the appellant's wife; and 4) denied the appellant's motion to suppress the results of his blood alcohol test.

We affirm.

The decedent and his wife were driving south on the freeway and exited at the Speedway off-ramp. The appellant was driving west on Speedway, and the collision occurred on Speedway when the decedent's car entered from the off-ramp. The evidence taken in the light most favorable to sustaining the jury's verdicts showed that the decedent entered Speedway on a green light going only five to ten miles per hour and that the appellant had run a red light, was going as fast as 55 miles per hour before braking for the collision and was extremely intoxicated, with a blood alcohol level of .22 percent.

The appellant's wife and the decedent's wife were both injured and were the victims named in the two endangerment counts. There was one other witness to the accident, one Vincent Rosas. He was driving behind the appellant. According to his testimony, the appellant's car was "speeding" and drove through a red light at the point where the accident occurred. No evidence really contradicted these facts, and the only question at trial was whether the appellant was the driver of his car.

### The Civil Action

The entire record of this issue is contained in two pages of the trial transcript. The trial court was hearing motions after impanelment of the jury but prior to opening statements.

"MISS JOHNSON [the prosecutor]: I make a motion in limine to preclude him from asking whether there was insurance in this case or there was a civil suit filed.

THE COURT: Do you intend to show that?

MR. SHERICK [defense counsel]: Yes.

MISS JOHNSON: There was a default judgment that was taken against the defendant by her attorney. I don't think it is relevant. It is not relevant to the case.

THE COURT: What do you propose to try to prove, Mr. Sherick? That there

was a civil suit filed and a default judgment taken?

MR. SHERICK: Yes, sir.

THE COURT: What is the relevance?

MR. SHERICK: Motive.

THE COURT: She already has her judgment.

Just the fact that a civil suit was filed and a default judgment was taken, I don't see how that bears on it.

Was there a judgment entered?

MR. SHERICK: That is what she claims. I think there was a default entered.

THE COURT: A default but no judgment?

MR. SHERICK: Yes, sir. I think there is a motive. She made statements to the adjuster. The fact that she filed a civil lawsuit is relevant.

What we are talking about here is whether there is a motive to lie at the trial. The motive in this case would be if she was to give a statement inconsistent to the one she had previously given, she might be charged with perjury. Her incentive in this trial is to testify consistently with what she's said in the past. What she said in the past was influenced by whether or not a civil suit could be filed and whether she could prevail, namely, that the other guy was at fault. That is my theory.

THE COURT: That motion is granted. I see no relevance at all to the fact that she filed a lawsuit and got a default judgment."

The state's written motion, which had been filed the day before, argued only that evidence concerning any pending civil suit was irrelevant and contained no citation of authority. It contained no mention of whether either a default or a judgment had been entered in the civil action. The trial judge was not directed to the Arizona decisions holding that it is relevant to show that a witness has initiated a civil action against a criminal defendant arising out of the same incident for which the defendant is on trial. See *State v. Ornelas*, 15 Ariz. App. 580, 490 P.2d 25 (1971) (affirming the trial court's order granting a new trial based on the same trial error); also see *State v. Taylor*, 9 Ariz.App. 290, 451 P.2d 648 (1969). The most compelling Arizona authority is *State v. McMurtry*, 10 Ariz. App. 344, 458 P.2d 964 (1969), an opinion of then-Judge Cameron (now Justice Cameron of our supreme court) for the Court of Appeals, Division One, wherein refusal to allow examination into the complaining witness's pending civil action was held to be reversible error. McMurtry was charged with theft of the bumper and top from the witness's auto. A civil action for conversion of these items had been instituted against him. We are unable to distinguish the present facts from *McMurtry*. Here the widow commenced an action for the wrongful death of her husband, the manslaughter victim. She was also a victim of one of the endangerment counts. We have examined her testimony as witness for the state.

Neither are we persuaded that the instant case can be distinguished because either a default or a default judgment may have been entered in the civil action. The witness still had a motive to testify to facts consistent with the position she had taken in the wrongful death case. If she had given conflicting testimony in this criminal case, it may well have had some bearing in the civil action. This would have been for the jury to determine based on full disclosure of all this evidence.

In *State v. Burris*, 131 Ariz. 563, 643 P.2d 8 (App.1982), this court held it was not reversible error to reject evidence that the victim had discussed with an attorney the possibility of filing a civil suit against the defendant. In *Burris*, we said the motive and interest of the victim was clear without that evidence: "He was chained up and shot at by appellant." 131 Ariz. at 567, 643 P.2d 8. We also said that it would show a motive for lying only if it could be shown that the victim had changed his story after being contacted by the attorney. The actual filing of a civil lawsuit was still "up in the air." In *Burris*, the record disclosed that the victim's material testimony was

the same as he had previously told the sheriff. We concluded that any error in rejecting the testimony was harmless.

■ We believe it was error to deny the appellant the right to cross-examine the victim's widow concerning the wrongful death action. However, this does not mean that we must reverse. In order to justify reversal the error must be shown to be prejudicial. *State v. Smith,* 113 Ariz. 298, 552 P.2d 1192 (1976). Error is nonprejudicial if it can be said that the error, beyond a reasonable doubt, had no influence on the jury's verdict. *State v. Hunter,* 136 Ariz. 45, 664 P.2d 195 (1983). When the record discloses overwhelming evidence of a defendant's guilt, an erroneous exclusion of evidence can be harmless beyond a reasonable doubt. *State v. Gretzler,* 126 Ariz. 60, 612 P.2d 1023 (1980), cert. denied, 461 U.S. 971, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983).

■ The victim's wife testified that her husband had the green light when he entered Speedway going five to ten miles per hour and that they were immediately struck broadside by the other car. Except for the speed of their vehicle, this testimony was corroborated by the disinterested eyewitness and the physical evidence. See *State v. Daymus,* 90 Ariz. 294, 367 P.2d 647 (1961). The crucial question in the case—was the appellant driving?—was not proven, either way, by the witness's testimony. As we observed in *Burris,* it was also self-evident that if the widow had any motive to testify or any interest in the case it would be unfavorable to the appellant. He had killed her husband. We hold that the error was, under the facts of this case, harmless beyond a reasonable doubt.

We find no error in the other issues presented.

■ The state was permitted to call the appellant's wife as a witness despite the anti-marital fact privilege, A.R.S. § 13-4062(1) (Supp.1984). Mrs. Salazar was a victim of one of the endangerment counts and, as such, came within the exception in the statute permitting her to be examined in a "proceeding for a crime committed by the husband against the wife, ...." We are not persuaded that this exception should not apply because the crime of endangerment involves reckless, as opposed to intentional or knowing, conduct. No authority is cited for such a distinction and we have found none. We believe that having an accident driving while intoxicated on a city street at 55 miles per hour with one's spouse as a passenger is a crime which most certainly places a strain on the marriage relationship, the test discussed by our supreme court in *State v. Crow,* 104 Ariz. 579, 457 P.2d 256 (1969), over'd on other grounds, *State v. Burchett,* 107 Ariz. 185, 484 P.2d 181 (1971). And see *State v. Williams,* 133 Ariz. 220, 650 P.2d 1202 (1982).

■ On the witness stand the appellant's wife testified she could remember nothing about the accident, including whether the appellant, her husband, was driving. The question of who was driving was in dispute. The state was permitted to impeach her with a prior statement. This was permissible under either Rule 801(d)(1), Rules of Evidence, 17A A.R.S. (Supp.Pamph. 1984), as a prior inconsistent statement, or Rule 804(b)(5) if she had really lost her memory and was then an unavailable witness under Rule 804(a)(3). See *State v. Just,* 138 Ariz. 534, 675 P.2d 1353 (App. 1983).

We come now to the final issue, the admission of the blood alcohol test. The appellant was admitted to the hospital for treatment. Hospital personnel had taken a sample of his blood for medical purposes. The police officer, who had probable cause to believe that appellant was driving while intoxicated, requested a sample pursuant to A.R.S. § 28–692(M) (Supp.1984). That statute provided, in part,

"Notwithstanding any other [1] provision of law to the contrary, if a law enforce-

---

**1.** In 1984 the legislature amended the statute by deleting the word "other" from before the word "provision."

ment officer has probable cause to believe that a person has violated this section [2] and a blood sample is taken from that person for any reason a portion of that sample shall be provided to a law enforcement officer if requested for law enforcement purposes."

■ The appellant's reliance on *State v. Waicelunas*, 138 Ariz. 16, 672 P.2d 968 (App.1983) is misplaced since it was decided before the enactment of the statute. The statute does not require that the appellant be under arrest, only that probable cause exist. As the trial court correctly noted in its minute entry ruling, the officer complied with the statute and the resulting test was admissible under the statute.

This may not, however, answer the appellant's contention that the procedure violated his Fourth Amendment right to be secure from unreasonable search and seizure. Assuming, arguendo, that giving the officer a portion of the blood sample is the equivalent of a nonconsensual taking, we consider this issue. Although we considered the newly enacted statute, A.R.S. § 28–692(M), in *State v. City Court*, 138 Ariz. 244, 673 P.2d 988 (App.1983), we were not called upon to answer this question.

In *Waicelunas*, Division One of our court held that unless the defendant was arrested first, the nonconsensual taking of a blood sample was a Fourth Amendment violation. The court relied upon a Ninth Circuit interpretation of *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). In the Ninth Circuit decision, *United States v. Harvey*, 701 F.2d 800 (9th Cir.1983), the court noted that the *Schmerber* defendant was under arrest and therefore reasoned that an actual arrest was necessary to comply with Fourth Amendment protections. The reasoning of the *Harvey* court is quoted in *Waicelunas* at 138 Ariz. 20, 672 P.2d 972, and we set it forth again here:

" 'Requiring an actual arrest prior to the removal of a blood sample will not place an undue burden on police. If placing a suspect under arrest is but a "silly for-

mality," as the United States argues in *Harvey*, there is no reason why the police cannot take the time to engage in this ritual prior to taking the sample. Placing the suspect under arrest will help ensure that the police do not arbitrarily violate an individual's privacy. Also, it will sharply delineate the moment at which the police officer determined he or she had probable cause to arrest. In this respect, it will prevent an after-the-fact justification of the seizure of the suspect and the blood. (citation omitted) Furthermore, the formal announcement of arrest triggers certain responsibilities for the arresting officer and gives rise to certain rights for the accused; for example, those rights delineated in a proper *Miranda* warning.' "

■ We disagree with both *Waicelunas* and *Harvey*. The reasons given in *Harvey* are not persuasive and, although *Schmerber* says that its result, i.e., that the taking of the blood sample was not violative of the Fourth Amendment, was reached only on the facts of the case, it does not turn on the fact of arrest. Rather, it stresses facts which are present here, that is, that the test was reasonable and commonplace; that the officer was confronted with an emergency in which the delay necessary to obtain a warrant would threaten the destruction of evidence since the percentage of alcohol in the blood begins to diminish shortly after the drinking stops; and that the test is a highly effective means of securing evidence. We are not alone in this interpretation of *Schmerber*, see Annot., 14 A.L.R. 4th 690, § 3[a] (1982) and cases cited therein.

While we recognize that the Arizona statute may permit securing the blood sample under less than exigent circumstances, we believe it passes constitutional muster by requiring that the officer must have probable cause to believe that the suspect has committed the offense of driving a motor vehicle while intoxicated. The existence of such cause is not questioned in the instant

2. D.W.I.

case, and we are satisfied from our review of the record that probable cause existed. We hold that an actual arrest of the appellant was not required, that the statute is not unconstitutional, and that the blood test was properly admitted.

Affirmed.

HOWARD and FERNANDEZ, JJ., concur.